Donald BLANTON, Jimmy Francis, Gary Ralston, Ernest Johnson, James Robert Jones, Jr., Jerry L. McCullough, and all other persons similarly situated, Plaintiffs–Appellees,

v.

CITY OF MURFREESBORO; Joe B. Jackson; E.C. Fite, Jr.; Robert W. Scales; W. Richard Reeves; Mary F. Huhta; Roger G. Haley; John B. Pittard; and Martin McCullough, Defendants–Appellants.

No. 87–5934.

United States Court of Appeals,
Sixth Circuit.

Argued July 21, 1988.

Decided Sept. 7, 1988.

---

Thomas L. Reed, Jr., Murfreesboro, Tenn., William N. Ozier (argued), Bass, Berry & Sims, Nashville, Tenn., for defendants-appellants.

Thomas A. Woodley, Mulholland and Hickey, Washington, D.C., Gregory K. McGillivary (argued), John D. Schwalb, Bolin, Ash, & Schwalb, Murfreesboro, Tenn., for plaintiffs-appellees.

Before MARTIN, WELLFORD and NELSON, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

The City of Murfreesboro, Tennessee, appeals the grant of summary judgment for Donald Blanton and other similarly situated city fire fighters in this action under the provisions of section 8 of the 1985 Amendments to the Fair Labor Standards Act, Public Law 99–150, 29 U.S.C.A. § 215. This case presents an issue of first impression: whether a municipality's downward adjustment of the base wage rates of its fire fighters so as to offset the recently imposed cost of including such employees within the benefit provisions of the Fair Labor Standards Act violates section 8 of the 1985 Act.

In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court made the Fair Labor Standards Act and its minimum-wage and overtime provisions expressly applicable to state and municipal employees. This decision effectively overruled the Court's earlier decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). To ease the fiscal transition for state and local governments newly subject to the Act, Congress passed amendments allowing governmental entities under certain circumstances to award compensatory time in lieu of cash overtime payments; the amendments also postponed the effective date of the Act's application to April 15, 1986, one year after *Garcia* was decided.

Most significantly of all, Congress enacted a provision, section 8 of the 1985 Act, to prohibit governmental discrimination against employees newly entitled to financial benefits.

This section 8 provides that no state agency may "discriminate[ ] ... against an employee with respect to the employee's wages or other terms or conditions of employment *because* ... the employee asserted coverage under section 7" (emphasis added) of the Act.[1] Section 7 establishes the number of hours above which overtime is triggered for fire fighters. 29 U.S.C. § 207.

After *Garcia* was decided, the City of Murfreesboro adopted a series of resolutions to deal with the application of the Act. These resolutions had the effect initially of excluding meal and sleep time as compensable hours; ultimately, however, sleep time was restored as compensable hours. Fire fighters were given until June 1, 1985, to make known their objections to the resolutions, but no objections were raised by that date.

As the April 15, 1986, date for implementing the amendments approached, 85 City of Murfreesboro fire fighters officially informed the City that they had "selected Local No. 3035 of the International Association of Firefighters ... for the purpose of discussing and possibly entering into an agreement regarding ... the assignment and use of comp time in lieu of overtime pay." The fire fighters also, on the first three days of the Act's coverage, objected in writing to the exclusion of meal time from their compensable hours. In response to these objections, the City informed the fire fighters that for it "to operate within its budget," the fire fighters' election necessitated a change in the hourly rate of pay the City would pay. The City thereupon adjusted the base hourly

wage rates of the fire fighters downward to take account of the fact that the inclusion of meal times as compensable hours pushed the hours worked per 21-day shift above the threshold for overtime compensation required by the Act.

In May of 1986, the fire fighters brought suit alleging that the City had reduced their wages because they had "asserted coverage" under the Fair Labor Standards Act. The district court found as a matter of law that the fire fighters had "asserted coverage" under section 7 of the Act, and that the City had "discriminated" against them in violation of section 8 by unilaterally reducing their wages, 658 F.Supp. 1540. Finding that the City had not alleged good faith, the court also awarded liquidated damages pursuant to 29 U.S.C. § 216(b), thereby doubling the award to the fire fighters. The City of Murfreesboro now appeals.

The crux of the City's argument is that there are unresolved issues for trial on the issue of whether the City's action in reducing the wages was, in fact, retaliation. The City argues that its motive or *intent* in reducing the hourly wage rate was not in fact retaliatory and that its intent is certainly material to the resolution of this case. The district court held that while the City's intent may not have been retaliatory, such a determination was, as a matter of law, "not material to the resolution of this case."

The City argues that the word "because" in section 8 indicates that there must be a showing of causation between the fire fighters' assertion of coverage and the City's alleged discrimination. The City relies for its interpretation of section 8 upon the plain language of the statute, as well as upon an opinion letter by the then Solicitor of Labor in which he wrote that a one-time reduction of wages in response to

---

1. In its entirety, section 8 provides:

A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(a)(3) of such Act. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986, only for an employee who takes an action described in section 15(a)(3) of such Act.

the added overtime costs of the Act's coverage would not violate section 8 of the proposed legislation, various bits of legislative history, and the parallels between section 8 and section 15(a)(3) of the Act, where courts have foud that there must be a showing that the claimed retaliation was the "motivating" or "determinative" factor of the adverse action. *Brock v. Richardson*, 812 F.2d 121, 123 n. 1 (3d Cir.1987).

The City argues that the adjustment in the fire fighters' base wage rates was made not in retaliation but out of fiscal necessity to keep the City within its previously approved budget. The City also argues that it is entitled to a good faith defense pursuant to 29 U.S.C. § 260, which provides that in any action "to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act," the court "may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." The court's authority not to award liquidated damages is contingent upon the employer "show[ing] to the satisfaction of the court" that its actions were "in good faith" and that the employer had "reasonable grounds for believing" that it was not violating the Act. 29 U.S.C. § 260. The district court concluded, however, that the defendants had not "plead[ed] and prove[d]" the defense of good faith and that in fact the City had waived its good faith defense during oral argument on the motion for summary judgment. The City argues that under section 260, they do not need to "plead and prove" the good faith defense, and, therefore, the court improperly awarded the full amount of liquidated damages to the fire fighters.

As an initial matter, we reject the argument of the City that this case can be resolved by merely looking to the language of section 8. We believe it is important to discern the legislative intent where, as here, the statutory language does not lend itself to a plain and unambiguous meaning. There is, however, "no errorless test for identifying or recognizing 'plain' or 'unambiguous' language." *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). It is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.'" *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (cite omitted); *see also United States v. Thompson*, 669 F.2d 1143, 1145 (6th Cir.1982). While we recognize today that the use of legislative history, much of which is not recorded until after the final congressional action, in trying to understand the intent of Congress, is not as meaningful as it once was, we find ourselves with no other means of determining the intent of Congress in enacting this legislation. Reading section 8 in the context of the statutory scheme of which it is a part and in the context of the legislative history, we find ourselves unable to accept the City's interpretation of section 8.

■ We do recognize, however, that the City's argument that the phrase "because on or after February 19, 1985, the employee asserted coverage," justifies the position that a court must determine prior to imposing liability that the City has acted in retaliation is an argument that carries some weight. Unfortunately for the City, the language of the statute does not compel that conclusion and the legislative history rules it out.

The legislative history of section 8 defines the scope of protection provided under that section:

> The antidiscrimination provision is meant to apply where one or more employees are singled out for adverse treatment in retaliation for an assertion that they are covered by the overtime provisions of the FLSA. The provision also is intended to apply where an employer's response to the assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees. In either instance, the actual victims of dis-

crimination must show that coverage was asserted and they also must show actual discrimination, i.e., that the employer's action constituted retaliation for the employee or employees' assertion of coverage and avoidance of the asserted protections of Federal law. If a court so finds, that conduct would be unlawful under section 8.

Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99–357, at 8–9, *reprinted in,* 1985 U.S. Code Cong. & Admin. News 651, 670.

The Conference Committee went on to explain that:

> The compensatory time and deferred effective date provision of these amendments are to relieve the economic impact of having to comply with the FLSA's premium rate requirements for overtime. Having provided for this relief, we agreed to preserve the same premium rate requirement that has been a part of the FLSA for nearly 50 years. We did not, at the same time, authorize employers to undermine that premium rate with impunity. In what we view as analogous circumstances, DOL regulations explicitly condemn employer efforts to adjust or recalculate regular rates of pay so as to evade the overtime requirements of the Act. (29 CFR 778.500).

We also find strong support for our view that the fire fighters need not show that the City intended to discriminate in order to prove a violation of section 8 in the comments of Representative Hawkins, the Chairman of the Committee of Conference. In discussing the results of the deliberations of the Joint Committee of Conference, Representative Hawkins explained:

> During the conference, there were three issues which surfaced which generated substantial debate, and I would like to take just a few moments to offer very brief clarification of those issue.
>
> First, the conferees debated at length whether or not to impose an intent standard in conjunction with section 8, the provision providing for protection against discrimination. A series of words were offered and rejected, including "motivated," and the word, "intended" itself. Each of these words was rejected *for the specific purpose of ensuring that section 8 would not be construed to require a showing of intent* in conjunction with an employee's discrimination charge.

Remarks of Representative Hawkins, 131 Cong.Rec. H9916 (Nov. 7, 1985) (emphasis added).

We would also note that the Joint Committee of Conference stated that section 8 was "not intended to prohibit State or local government employers from adjusting rates of pay *at some later point* in response to fiscal concerns not directly attributable to the impact of extending FLSA coverage to their employees." (emphasis added) Joint Committee of Conference, at 9, 1985 U.S. Code Cong. & Admin. News, at 671. That committee explained that the purpose of section 8 was to prevent unilateral reductions in pay or benefits by public employers who would otherwise take such action "so as to negate the premium compensation mandated by this legislation." *Id.* We believe this language and the previously cited legislative history clearly suggest that an employer has a defense to a unilateral reduction in wage rates only if the employer can prove that employee wages were reduced out of fiscal concerns not attributable to extending the Act's coverage to municipal employees. Public employers may not take such steps, however, solely and directly in response to the extension of the Act's coverage. In the case at hand, however, that is precisely what the City of Murfreesboro did when confronted with the requirement of extending the Act's coverage to its employees. Actions by public employers to reduce employee pay and benefits, taken as the sole and direct result of fiscal pressures created by the mandated extension of Fair Labor Standard Act benefits, run afoul of the strictures of section 8. A contrary result would allow public employers to deny permanently the "premium compensation" that the *Garcia* decision and congressional action intended public employees to receive.

We are not at all persuaded by the City's reliance upon a letter by former Solicitor of Labor, Francis Lilly, which was read into the Congressional Record by Representative Jeffords before the Conference Committee report was issued and before the date section 8 was enacted. The letter suggested that the Department of Labor believed that there was an intent requirement. Not only did Lilly's letter, written before section 8 was enacted, address a situation in which an employer reduced its compensation to employees without any assertion of coverage under the Act, but, even more importantly, the Department of Labor's current view is now directly contrary to that in the letter. In its 1986 memorandum analyzing the legislative history to section 8, the Department of Labor concluded:

> Thus, although the text of Section 8 itself refers to only one date, it is a reasonable reading of the legislative history that two effective dates were intended. It is therefore our opinion that under the provisions of Section 8, actions taken by public employers subsequent to February 19, 1985, would constitute discrimination if they are in response to assertions of FLSA overtime coverage by employees after February 19, 1985. *Actions taken by employers on or after November 13, 1985 to reduce employees' regular rate of pay or fringe benefits, which are intended to nullify the effect of FLSA overtime coverage, would constitute discrimination under Section 8* whether or not they are in response to employee assertions of coverage.

(emphasis added)

■ Thus, in this area of uncertainty, we believe some deference may be shown to the agency charged with enforcing the Fair Labor Standards Act. Absent any compelling arguments to the contrary, and given the above conflicts, we agree with the Department of Labor's current interpretation that it is not necessary to prove the employer intended to retaliate to prove a violation of section 8 if an employer, such as the City of Murfreesboro, reduced its employees' rates of pay so as to nullify the effect of extending the Act's coverage.

We also note that Congress enacted the 1985 amendments to the Fair Labor Standards Act to ease the burden imposed on states and local municipalities by the Supreme Court's decision in *Garcia.* Congress allowed employers to delay complying with the overtime requirements of section 7 until April 15, 1986, and to delay making any actual overtime payments until August 1, 1986. Furthermore, Congress allowed employers to enter into agreements with employees to provide compensatory time in lieu of cash overtime pay. While Congress aided state and local governments with these provisions, Congress also enacted section 8 to prevent employers from using devices designed to evade the overtime requirements of the Act. The passage of section 8 is uncontrovertible evidence that Congress was concerned not only with the financial impact of the *Garcia* decision but also with protecting the benefits gained by public employees.

We are also not persuaded by the City's efforts to graft the intent requirement of section 15(a)(3) onto section 8. Section 8, we believe, possesses a meaning distinct from that of section 15(a)(3). Section 8 provides explicitly that its protections are available only until August 1, 1986, after which "the protection against discrimination afforded by the preceding sentence shall be available ... only for an employee who takes an action described in Section 15(a)(3) of the Act." Thus, it is clear from the language of the statute that the employee protections provided under section 8 are, until August 1, 1986, greater than those set forth under Section 15(a)(3). While we recognize that there are similarities in the language of the two statutes, this is not sufficient to overcome the legislative history concerning the meaning of section 8.[2]

---

2. 29 U.S.C. § 215(a)(3) provides:
   [i]t shall be unlawful for any person ... to discharge or in any other manner discrimi-

nate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under

■ Lastly, we turn to the City's argument that the district court erroneously determined that it had not pleaded and had not offered to prove a good faith defense pursuant to 29 U.S.C. § 260, whereby it could avoid payment of liquidated damages. The City argues that the district court was also wrong to require it to plead and prove the good faith defense. The district court awarded plaintiffs liquidated damages pursuant to section 16(b) of the Fair Labor Standard's Act, 29 U.S.C. § 216(b). That section provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.

These liquidated damages are not designed to be punitive in nature but, rather, compensatory. *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982). The limited good faith defense to an award of liquidated damages which is set forth in section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, provides, in part:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

The problem with the district court's analysis, however, is that it erroneously interpreted 29 U.S.C. § 216(b). The language quoted above from section 216 may indeed justify the award of liquidated damages if the City had in fact violated the provisions of sections 206 or 207 of the Act. But the City has not violated those provisions. Rather, it was determined, and we have affirmed, that the City violated section 8. Section 8 provides that an employer

violating its terms "shall be held to have violated section 15(a)(3)" of the Act. 29 U.S.C. § 215. The standard for requiring the payment of liquidated damages in the event of a violation of section 15(a)(3) is fundamentally different from that governing a violation of section 206 or 207. Section 216(b) clearly provides that "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief *as may be appropriate to effectuate the purposes of section 215(a)(3)* of this title, including ... the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (pocket part) (emphasis added).

In the case at hand, there has been no determination that the payment of liquidated damages by the City of Murfreesboro will "effectuate the purposes of section 215(a)(3)," as required by section 216(b). Having canvassed the record, furthermore, we are convinced that such an award does *not*, in this case, further the Act's purposes. It is beyond dispute that the City of Murfreesboro believed at all times that its actions in adjusting the base wages rates of its fire fighters were wholly lawful. Thus, we agree with the City that the district court erred when it ordered the payment of liquidated damages.

■ The City's final argument is that the district court improperly computed the fire fighters' back pay because it allowed no credit for an increase in wages made effective June 26, 1986. Because this wage increase was awarded across-the-board to all city employees, however, we see no merit in permitting the City credit for a wage increase given to all other city employees.

Accordingly, the decision of the district court awarding judgment to the fire fighters is affirmed. We reverse, however, the award of liquidated damages and remand this matter for a determination of the amount of back wages owed each fire fighter from April 15, 1986, forward, plus any accrued interest thereon, as well as for

or related to this chapter, or has testified or is about to testify in any such proceeding, or has

served or is about to serve on an industry committee.

a determination of reasonable attorneys fees.