890 F.2d 836
 29 Wage & Hour Cas. (BN 958, 113 Lab.Cas. P 35,292
 David ADAMS; James Cantrell; and Kendall Mayfield, and all
other persons similarly located, Plaintiffs-Appellants,
v.
CITY OF McMINNVILLE, Defendant-Appellee,
Herb Graeser; Bill Lively; and Pete Holt, individually and
in their official capacities, Defendants.
 No. 88-5927.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 6, 1989.
Decided Nov. 29, 1989.
 
 John D. Schwalb, argued, Brewer, Krause & Brooks, Nashville, Tenn., for plaintiffs-appellants.
 Clinton H. Swafford, argued, Winchester, Tenn., James W. Dempster, McMinnville, Tenn., for defendant-appellee.
 Before KEITH and NORRIS, Circuit Judges, and BROWN, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Firefighters from the City of McMinnville, Tennessee appeal the district court's order entering judgment in favor of the city on their claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201 et seq. Plaintiffs had brought claims against the city seeking (1) minimum wage payments for three firefighters and (2) damages resulting from the city's having allegedly discriminated against them for asserting coverage under the FLSA. For the reasons discussed below, we reverse the district court's judgment with respect to the minimum wage claim and affirm the judgment with respect to the discrimination claim.
 
 I.
 
 2
 This action arises in the aftermath of Garcia v. San Antonio Metro Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), in which the Supreme Court determined that the provisions of the FLSA were applicable to state and local governments. In response, Congress enacted the Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150, 99 Stat. 789, to "ease the fiscal transition for state and local governments newly subject to the Act." Blanton v. City of Murfreesboro, 856 F.2d 731, 732 (6th Cir.1988). Among the amendments were provisions that parts of the FLSA would not apply to state and municipal governments until April 15, 1986, Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150, Sec. 2(c)(1), 99 Stat. 787, 788-89 (codified as amended at 29 U.S.C. Sec. 216 note), and that states and their political subdivisions are prohibited from discriminating in terms of employment against any employee who asserts coverage under the Act. Id. at Sec. 8, 99 Stat. at 787, 791 (codified as amended at 29 U.S.C. Sec. 215 note).
 
 
 3
 The FLSA permits municipalities to require firefighters to work 216 hours every 28 days without invoking the Act's overtime provisions. 29 U.S.C. Sec. 207(k). At the time Garcia was announced, McMinnville's firefighters worked 24 hours on duty followed by 24 hours off duty, for a total of 288 hours worked every 28 days. Therefore, under the FLSA standard, the city would have been required to pay each firefighter for 72 hours at the overtime rate.
 
 
 4
 In order to avoid this result, the city attempted to reach an agreement with the firefighters to exclude meal and sleep time from their compensable hours. See 29 C.F.R. Secs. 553.222 and 553.223 (formerly codified at 29 C.F.R. Sec. 553.15(b)). When the firefighters rejected this proposal, the city unilaterally switched them to a schedule in which they worked 24 hours, followed by 48 hours off duty. The effect of that change was to reduce the total number of hours each firefighter worked so that overtime pay would not be required. However, the city increased the firefighters' base salary with the result that their take-home pay was reduced by 8.1 percent, but their effective hourly pay rate was substantially increased.
 
 
 5
 Prior to April 15, 1986, three firefighters--Freeman, Mayfield, and Underwood--earned less than the hourly rate prescribed by the FLSA.
 
 
 6
 The firefighters filed a complaint in the United States District Court, alleging that the city had violated the FLSA by failing to pay the three firefighters a minimum wage prior to April 15, 1986, and had discriminated against its firefighters in violation of the 1985 Amendments by unilaterally implementing a reduction of hours. Finally, they alleged that the city's unilateral reduction of hours violated 42 U.S.C. Sec. 1983 by discriminating against them for exercising their First Amendment rights.
 
 
 7
 The case was tried to the court without a jury. The court concluded that the city was not required to pay the three firefighters a minimum wage prior to April 15, 1986, because Congress had postponed application of the minimum wage provisions to municipal governments until that date. The court also determined that the city had not discriminated against the firefighters for their assertion of coverage under the FLSA, and that, therefore, it had not violated either the 1985 Amendments or 42 U.S.C. Sec. 1983. Accordingly, judgment was entered in favor of the city.
 
 
 8
 In this appeal, while the firefighters dispute the determinations that municipal governments were exempted from the minimum wage requirement until April 15, 1986, and that the city had not discriminated against them, they do not challenge the disposition of their section 1983 claims.
 
 II.
 
 9
 Section 2(c)(1) of the 1985 Amendments to the FLSA provides as follows:
 
 
 10
 No State, political subdivision of a State, or interstate governmental agency shall be liable under section 16 of the Fair Labor Standards Act of 1938 for a violation of section 6 [the minimum wage provision] (in the case of a territory or possession of the United States ), 7, [the overtime provision] or 11(c) [the record keeping provision] (as it related to section 7) of such Act occurring before April 15, 1986, with respect to any employee of the State, political subdivision, or agency who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985, and published in sections 775.2 and 775.4 of title 29 of the Code of Federal Regulations.
 
 
 11
 99 Stat. 787, 788-89 (codified as amended at 29 U.S.C. Sec. 216 note) (emphasis added). The FLSA defines the term "State" to include "any State of the United States or the District of Columbia or any territory or possession of the United States." 29 U.S.C. Sec. 203(c).
 
 
 12
 The district court interpreted section 2(c)(1) to exempt state and municipal governments from liability for violations of the FLSA's minimum wage provision, the overtime provision, and the record-keeping provision (insofar as it relates to the overtime provision) until April 15, 1986. That interpretation was incorrect insofar as it determined that section 2(c)(1) postponed the liability of state and municipal governments for violations of the minimum wage provision. The language of the statute only postpones that liability for territories and possessions. Reading the amendment to exempt state and municipal governments from liability until April 15, 1986, would render meaningless the parenthetical phrase, "in the case of a territory or possession of the United States," following the words "section 6." Since "State" is defined to include territories and possessions, the parenthetical phrase must be read to exempt only territories and possessions from liability for violations of section 6, the minimum wage provision, until April 15, 1986.
 
 
 13
 In addition, section 2(c)(1) explicitly postpones liability for state and municipal governments for violations of section 11(c), the record-keeping provision of the FLSA only insofar as it relates to section 7, the overtime provision. The fact that section 2(c)(1) does not exempt state and municipal governments from the record-keeping provision insofar as it relates to the minimum wage provision of the FLSA, also supports the conclusion that the amendment was not intended to postpone liability for state and municipal governments for violations of the minimum wage provision of the FLSA.
 
 
 14
 The legislative history of the 1985 Amendments also supports this reading. The Conference Committee reported that
 
 
 15
 [u]nder the Senate Bill and the House Amendment public agencies are shielded from liability for violations of section 7 [the overtime provision] of the FLSA which occur before the effective date, April 15, 1986. The conference substitute provides the same shield with regard to violations of section 6 [the minimum wage provision] of the FLSA for territories and possessions of the United States.
 
 
 16
 Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7, reprinted in 1985 U.S.Code Cong. & Admin. News 651, 668.
 
 
 17
 Accordingly, we reverse the district court's judgment in favor of the city on the minimum wage claims of firefighters Freeman, Mayfield, and Underwood, and remand that claim to the district court for a determination of these firefighters' damages.
 
 III.
 
 18
 Section 8 of the 1985 Amendments provides, in pertinent part, that:
 
 
 19
 A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(a)(3) of such Act.
 
 
 20
 99 Stat. 787, 791 (codified as amended at 29 U.S.C. Sec. 215 note).
 
 
 21
 The district court held that the city had not violated this section because the decision to reduce the firefighters' hours was not made in retaliation for the firefighters' assertion of coverage under the FLSA, but was instead made in response to a legitimate budgetary restriction. The firefighters contend, citing this court's decision in Blanton v. City of Murfreesboro, 856 F.2d 731, 734-36 (6th Cir.1988), that the city discriminated against them even if its decision was motivated by fiscal concerns, because those concerns were attributable to the city's having learned that the FLSA was to be applicable to municipal employees.
 
 
 22
 In Blanton, this court held that the City of Murfreesboro violated section 8 when it reacted to the Garcia decision by unilaterally reducing the amount of the base hourly wage rate paid to its firefighters, while not reducing the number of hours they worked. Id. at 733-36. The court, "reading section 8 in the context of the statutory scheme of which it is a part and in the context of the legislative history," held that the firefighters need not show that the city intentionally acted in retaliation for their assertion of coverage under the FLSA. Id. at 734. Instead, the court concluded that legislative history indicated that Congress' purpose in enacting section 8 was to prevent cities from undermining the FLSA provisions for a premium compensation rate for overtime. Id. at 735 (discussing the Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 8-9, reprinted in 1985 U.S.Code Cong. & Admin. News 651, 670-71). The court concluded that a public employer which unilaterally reduces its employees' wage rate due to fiscal concerns attributable to the application of the FLSA violates section 8, because "[a] contrary result would allow public employers to deny permanently the 'premium compensation' that the Garcia decision and congressional action intended public employees to receive." Id. at 735.
 
 
 23
 We believe that this case presents a significantly different factual scenario. Here, the city did not attempt to alleviate the fiscal predicament threatened by the Garcia decision by reducing the firefighters' effective hourly pay rate, while requiring them to work the same number of hours, as had the City of Murfreesboro. Instead, the city adjusted the firefighters' schedule so that each firefighter would work fewer hours, with the result that the city would not be liable for premium pay since the firefighters would not work overtime. At the same time, the city raised their base salary so that their effective hourly pay rate actually increased, with the net result that, while they were on duty a significantly fewer number of hours, they received only a minor reduction in pay.
 
 
 24
 Viewing section 8 in the context of its statutory scheme and legislative history, we conclude that when a public employer responds to fiscal pressures created by the FLSA by reducing employees' hours in order that they not work overtime, thereby eliminating the city's need to pay premium wages for overtime, the employer does not violate section 8. As noted in Blanton and in the legislative history, the 1985 amendments to the FLSA were intended to defer the application to public employers of the FLSA premium compensation for overtime requirement, while at the same time assuring that those employers would not undermine that requirement. See id. at 735; Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 8-9, reprinted in 1985 U.S. Cong. & Admin. News 651, 670-71. Although reducing an employee's regular hourly pay rate can be said to deprive him of the benefit of the premium compensation requirement since his premium pay for overtime hours is also decreased, reducing or eliminating the overtime hours, without reducing his regular hourly pay, cannot be said to deprive the employee of the benefits of the premium compensation requirement. The premium pay for overtime hours remains the same, even though total compensation may decrease.
 
 
 25
 The FLSA guarantees that premium compensation will be paid to employees who work overtime. But it does not guarantee employees that they will be able to work overtime hours in order to receive premium pay. See 29 U.S.C. Sec. 207. Nor are we able to discern any intent on the part of Congress to single out municipal employees by guaranteeing them overtime hours.
 
 
 26
 In addition, legislative history explicitly distinguishes between a public employer who responds to the application of the FLSA to its employees by reducing their regular hourly pay rate and an employer who simply reduces the overtime hours its employees will work. The Conference Committee noted that
 
 
 27
 [a] unilateral reduction of regular pay or fringe benefits that is intended to nullify this legislative application of overtime compensation to State and local government employees is unlawful. Any other conclusion would in effect invite public employers to reduce regular rates of pay shortly after the date of enactment so as to negate the premium compensation mandated by this legislation.
 
 
 28
 Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 9, reprinted in 1985 U.S.Code Cong. & Admin. News 651, 670. In contrast, the Conference Committee also stated that "[a]n employer's adjustment of work schedules to reduce overtime hours would not constitute discrimination under this provision so long as it was not undertaken to retaliate for an assertion of coverage." Id. at 8, 1985 U.S.Code Cong. & Admin.News 670. While this language appears to offer hope for municipal employees when retaliation was the motivating factor in a municipality's decision to reduce overtime hours, the district court found that retaliation was not a motivating factor in the city's decision and we do not believe this finding was clearly erroneous.
 
 
 29
 Accordingly, we affirm the district court's decision with respect to the firefighters' discrimination claim.
 
 IV.
 
 30
 For the foregoing reasons, the order of the district court is affirmed in part and reversed in part, and this cause is remanded for further proceedings according to law and consistent with this opinion.