759 F.Supp. 1408 (1991)
PROFESSIONAL FIREFIGHTERS ASSOCIATION OF CLAYTON, by Mark THORP, Richard Winter, and Harry Gebhardt, in their capacities as Officers of the Association, and Mark Thorp, Richard Winter and Harry Gebhardt individually and as representatives of similarly situated individuals, Plaintiffs,
v.
CITY OF CLAYTON, Defendant.
No. 90-1099C(1).
United States District Court, E.D. Missouri, E.D.
April 3, 1991.
*1409 Bruce Cohen, Feldacker & Cohen, St. Louis, Mo., for plaintiffs.
A. Wimmer Carr, Tremayne, Lay, Carr, Bauer & Nouss, Clayton, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
The plaintiff firefighters bring the instant case alleging that defendant City of Clayton has failed to comply with the applicable provisions of the Fair Labor Standards Act ("FLSA") concerning overtime pay. Plaintiffs seek damages in the amount of overtime pay due.[1] The case was tried to the Court sitting without a jury. Having considered the pleadings, the testimony of the witnesses, the exhibits before the Court, and the stipulations of the parties, and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT
1. Plaintiff Professional Firefighters Association of Clayton is a voluntary unincorporated association of individuals employed as firefighters or paramedics by defendant City of Clayton ("Clayton"). Plaintiff Mark Thorp is the president of the Association, plaintiff Richard Winter the Association's vice president, and plaintiff Harry Gebhardt its treasurer; all three were employed by Clayton as firefighters during the period of time relevant to this action.
2. The following individuals, who were employed by Clayton as firefighters and members of the Association during some period relevant to this action, have consented to participation in this action and to representation by the named plaintiffs herein, in accordance with 29 U.S.C. § 216(b): Michael Blank, Jerald Bort, Michael Bradshaw, Michael Bryan, Norman Buehre, Robert Butenhoff, Jr., Kenneth David, Keith Grayson, Adolph Gubser, James Hartnett, Carl Heggemeyer, Frank Herrick, John Laventure, Dennis League, Phillip Lopez, Robert Luedde, Gary Marshall, *1410 Douglas Myers, Charles Nea, Daniel Nicewarner, Paul Nobe, Donald Perkins, Stephen Ruth, James Shankle and John Wolff.
3. Clayton is a constitutional charter city organized and existing under the laws of the State of Missouri, located in St. Louis County. Clayton is a public agency within the meaning of 29 U.S.C. § 203(x) and an employer within the meaning of 29 U.S.C. § 203(d).
4. On February 19, 1985, the United States Supreme Court issued its decision in Garcia v. San Antonio Metropolitan Mass Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), reinstating the application of the FLSA to state and local government employers.
5. On or about February 28, 1985, Clayton City Manager Lee Evett attended a meeting of the St. Louis County Municipal League at which he was informed of the Supreme Court's decision in Garcia. Thereafter, on or about March 1, 1985, Mr. Evett issued an interdepartmental correspondence to Ms. Leila McKinnon, Clayton's Director of Personnel, notifying her that the Supreme Court had issued a recent decision concerning the FLSA that could affect the City of Clayton.
6. Lee Evett sent a memorandum dated July 31, 1985 to Clayton's mayor and board of aldermen concerning the potential impact of the Garcia decision. Attached to the memorandum was an article by JoAnn S. Lublin from the July 23, 1985 Wall Street Journal discussing Garcia and state and local government reaction to it. In its summary of the response of various municipalities, the article read in part: "Amarillo, Texas, chose a different route. The city avoided $790,000 in additional annual overtime pay for firefighters by cutting their hourly rates 14% and keeping annual salaries unchanged."
7. In August of 1985, Lee Evett, Joseph Morgan, Clayton's Fire Chief, and Richard Morris, Clayton's Police Chief, attended a seminar on the FLSA hosted by the National League of Cities and the International City Management Association in Chicago, Illinois. At this conference, they received numerous handouts including government publications and handouts prepared by the speakers, none of which indicated that the measures ultimately taken by Clayton were in violation of the law.
8. The August, 1985 seminar included a panel discussion with a panel composed of attorneys and the regional director of the Department of Labor ("DOL"). Mr. Evett inquired as to the permissibility under Garcia of Amarillo's approach, as outlined in the Wall Street Journal article. The DOL representative indicated that such an approach would comply with Garcia so long as minimum wage requirements were still met and the salary reduction was done on a permanent basis and for all firemen.
9. On or about September 11, 1985, Fire Chief Morgan issued a memorandum to all members of the Clayton Fire Department containing the following passage:
Because the present 56-hour schedule exceeds that which is allowed without the payment of overtime, it will be necessary for the City to establish a work period of 204 in a 27-day period (a 53-hour work week with 3 hours of overtime scheduled on a weekly basis). Salaries will be adjusted so there will be no difference in the final pay.
In a meeting with firefighters concerning the memorandum, firefighter Paul Nobe told Fire Chief Morgan he did not think the policy outlined in the memorandum was in compliance with the FLSA.
10. In 1985 prior to the passage by Congress of the November, 1985 amendments to the FLSA, Lee Evett, Fire Chief Morgan and an associate city attorney met with Robert Hughes, Assistant Area Director of the DOL's Wage and Hour Division to discuss Clayton's planned approach to compliance with the FLSA. Clayton did not receive any written opinion or statement from the DOL at this meeting, but Mr. Hughes indicated his informal opinion that Clayton's plan complied with the FLSA.
11. In November, 1985, Congress passed the 1985 Amendments to the Fair Labor Standards Act, Public Law 99-150, which have become known as the "public sector amendments" to the FLSA, implementing the Supreme Court's decision in *1411 Garcia. The effective date of the amendments was April 15, 1986.
12. On or about November 14, 1985, Lee Evett issued an interdepartmental correspondence to all department heads concerning the recently enacted public sector amendments to the FLSA.
13. On or about March 11, 1986, Lee Evett issued an interdepartmental correspondence to all department heads with a DOL notice concerning guidelines for FLSA compliance by public employers. Page 2 of the notice contained an express reference to the anti-discrimination provisions of the FLSA, found at 29 U.S.C. § 215(a)(3).
14. On or about April 8, 1986, Lee Evett sent an interdepartmental correspondence to Fire Chief Morgan concerning compliance with the FLSA, indicating that Clayton's policy effective April 15, 1986 would result in fluctuations in amount from paycheck to paycheck, reflecting the actual hours worked during the pay period. The shift system of the firefighters involved widely varying hours worked from pay period to pay period. The memorandum was read by some of the firefighters.
15. Effective April 15, 1986, Clayton employed firefighters at the following annual rates of compensation: Senior Captain, $30,896.00; Captain, $30,008.00; Firefighters, $27,008.00. Prior to April 15, 1986, the date on which the FLSA became applicable to municipal employers, the annual salary of Clayton's firefighters was based on 2,912 hours of regularly scheduled work. Firefighters were paid additional overtime compensation for additional unscheduled hours, in the form of either additional wages or compensatory time.
16. As of April 15, 1986, in an attempt to comply with the FLSA, Clayton adopted and implemented a pay plan under which the annual 2,912 hours were considered to be comprised of 2,756 scheduled regular hours and 156 scheduled overtime hours, although annual compensation rates for firefighters remained unchanged. The plan reduced the effective hourly wage rates for firefighters. Under the new pay policy, unscheduled overtime hours were compensated at time-and-a-half. Clayton instituted a 27-day tour of duty for firefighters for purposes of calculating FLSA overtime to be compensated at time-and-a-half. On or about January 1, 1988, Clayton began utilizing a 28-day tour of duty for firefighters for purposes of calculating FLSA overtime.
17. On April 15, 1986, Leila McKinnon sent a memorandum to Lee Evett informing him that firefighters who read his April 8 memorandum to Fire Chief Morgan were complaining of receiving overtime "on paper only" and outlining other St. Louis area municipalities' methods of complying with the FLSA.
18. On April 22, 1986, Lee Evett issued an interdepartmental correspondence to Fire Chief Morgan in which he acknowledged that members of the Fire Department had raised concerns over the legality of Clayton's method for compliance with the FLSA. In response to that memorandum, which was read by some firefighters, Fire Chief Morgan met with firefighters and paramedics to discuss the overtime policy. At that meeting, firefighter Paul Nobe expressed the opinion of the firefighters generally that Clayton's reduction of the effective hourly wage was an illegal means of complying with the FLSA.
19. After April 22, 1986, firefighters continued to raise concerns about Clayton's overtime policy and the FLSA requirements at various "captain's meetings" with Fire Department supervisory personnel.
20. Sometime in 1987, Fire Chief Morgan brought Lee Evett a copy of a newspaper clipping indicating that a federal court had found a methodology similar to Clayton's not to comply with the FLSA. Evett asked Morgan to investigate the matter further, but no further action was ever taken.
21. Richard Morris assumed the position of Fire Chief in June of 1987. At a crew meeting with the new chief, firefighter Paul Nobe broached the subject of Clayton's compensation policy. Fire Chief Morris asked Nobe to express his concerns in the form of a letter. Thereafter, Mr. Nobe prepared and delivered to Morris a memorandum, *1412 dated July 2, 1987 and containing the following passage:
While researching information for this report I spoke with one gentleman in a neighboring fire department who is very active in their union. I have known this gentleman for approximately ten years. When I explained the City of Clayton's action on this ruling he stated that the reduction in hourly pay is clearly illegal and that the City of Clayton has not complied with the law.
The memorandum also contained a survey of the approaches of nearby municipalities to the FLSA requirements. Fire Chief Morris never discussed the memorandum with Mr. Nobe and no action was taken in response to this memorandum.
22. Sometime after July 2, 1987, Paul Nobe met with Lee Evett and asked him what inquiry or investigation Clayton planned to make in response to recent court cases questioning the legality of salary reduction as a means of compliance with the FLSA. Mr. Evett responded that those cases were settled out of Court and so were not of concern to Clayton.
23. On or about December 3, 1987, Fire Chief Morris spoke to Walter Steinmann of the DOL in Washington, D.C., who informed Morris that Clayton's overtime pay policies might not be in compliance with the FLSA. Mr. Steinmann told Fire Chief Morris that several legal challenges to such an approach had been made, with varying decisions by the courts based on a variety of factors.
24. On January 14, 1988, Fire Chief Morris sent an interdepartmental correspondence to Lee Evett memorializing his conversation with Mr. Steinmann. Clayton took no action to seek an official opinion letter from the DOL or to otherwise investigate the legality of its policies in response to this memorandum.
25. Because of the base hourly wage reduction implemented April 15, 1986, the individually named plaintiffs and the similarly situated individuals whom they represent have on occasion, commencing with the first tour of duty on April 15, 1986 and continuing to date, worked hours in excess of 204 hours per 27-day tour of duty and in excess of 212 hours per 28-day tour of duty, the maximum hourly levels specified in the FLSA at 29 U.S.C. § 207(k), without receiving the additional compensation therefor that they would have received had Clayton not reduced their base hourly wage.
26. Since April 15, 1986, firefighters and paramedics have received raises as follows: as of October 1, 1986, 5%; as of April 1, 1987, 3%; as of October 1, 1987, 3%; as of October 1, 1988, 4%; as of October 1, 1989, 7%.

CONCLUSIONS OF LAW
The Court has jurisdiction over the instant case under 28 U.S.C. § 1331 on the basis of the federal questions presented. Venue is proper in this district under 28 U.S.C. § 1391 because defendant is located herein and the claims arose in the district.

The FLSA Violation
Clayton concedes that it fashioned a compensation policy, effective April 15, 1986, which reduced its firefighters' effective hourly wage in order to circumvent the payment of additional overtime compensation under the FLSA, and that in so doing it violated the FLSA as per Blanton v. City of Murfreesboro, 856 F.2d 731 (6th Cir.1988). This Court agrees with the extremely thorough analysis of the legislative history and other pertinent considerations found in Blanton, and incorporates it herein by reference. The Court also agrees with the Sixth Circuit's conclusion that a municipality's reduction of the base wage rates of its firefighters so as to offset the impending cost of including such employees within the benefit provisions of the FLSA violates § 8 of the public sector amendments,[2] which section prohibits discrimination *1413 against employees on the basis of their entitlement to coverage under the FLSA. Id. at 735. Several other district courts have reached the same conclusion in the wake of Blanton: see, e.g., Alexander v. City of Plainview, 694 F.Supp. 221 (N.D. Tex.1988); York v. City of Wichita Falls, 727 F.Supp. 1076, 1079 (N.D.Tex.1989); Hill v. City of Greenville, 696 F.Supp. 1123, 1126 (N.D.Tex.1988); Craven v. City of Minot, 730 F.Supp. 1511, 1153 (D.N.D. 1989).
This Court finds one excerpt from the legislative history to be particularly elucidating on the question presented here and in Blanton:
The antidiscrimination provision [§ 8 of the 1985 amendments] ... also is intended to apply where an employer's response to the assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees....
....A unilateral reduction of regular pay ... that is intended to nullify this legislative application of overtime compensation to State and local government employees is unlawful. Any other conclusion would in effect invite public employers to reduce regular rates of pay shortly after the date of enactment so as to negate the premium compensation mandated by this legislation ... In what we view as analogous circumstances, DOL regulations explicitly condemn employer efforts to adjust or recalculate regular rates of pay so as to evade the overtime requirements of the Act [29 C.F.R. 778-500].
Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99-357 at 8-9, reprinted in Vol. 2 1985 U.S.Code Cong. & Admin.News 651, 670-71.
The complaint in this case alleges violations of both § 8 of the 1985 amendments and § 7 of the FLSA, 29 U.S.C. § 207. See ¶¶ XIV and XVI of the Complaint.[3] The Court of Appeals in Blanton, however, rejected any contention that § 7 of the FLSA was violated by Murfreesboro's policy. Id. at 737. Neither does Clayton's substantially similar policy violate the applicable overtime provision found in § 207(k), which sets forth the maximum number of hours per work period beyond which compensation must be paid at one-and-a-half times the regular rate. Clayton's policy does, in fact, comport with this rule. Clayton's violation involves the illegal adjustment of the regular rate, which is instead a violation of § 8 of the 1985 amendments and 29 U.S.C. § 215(a)(3).

Liquidated Damages
Plaintiffs seek liquidated damages under 29 U.S.C. § 216(b), relying on the following language therefrom:
Any employer who violates the provisions of ... section 7 of this Act shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.
This portion of § 216(b) is subject to the limitations found in § 260, captioned "Liquidated Damages":
[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action [against him] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.
Plaintiffs have thus introduced into the case the element of Clayton's good faith in devising its policy.
Here again the opinion in Blanton is instructive. Because the court there concluded Murfreesboro had violated § 15(a)(3) rather than § 7 of the FLSA, it found a different portion of § 216(b) applicable on the question of relief:
Any employer who violates the provisions of section 15(a)(3) of this Act shall *1414 be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3), including without limitation ... the payment of wages lost and an additional equal amount as liquidated damages.
Unlike the portion of § 216(b) dealing with violations of § 7, which contains mandatory language concerning liquidated damages subject to the good faith defense articulated in § 260, the portion of § 216 dealing with violations of § 215(a)(3) conditions relief on its appropriateness "to effectuate the purposes of section 15(a)(3)."
The Court of Appeals in Blanton found no determination by the lower court that liquidated damages would effectuate § 215(a)(3)'s purposes, and further found that such an award would not effectuate those purposes in light of Murfreesboro's belief that its policy was lawful. Id. at 737. Without reaching the question of good faith per se, then, this Court follows the example of Blanton, and refuses to award liquidated damages in light of Clayton's belief that its policy was in accord with the FLSA.[4] The Court concludes that the anti-discrimination purposes of § 15(a)(3) are not served by an award of liquidated damages in light of that belief.

Statute of Limitations
Ordinarily, the statute of limitations on an action under the FLSA for unpaid overtime compensation is two years, pursuant to 29 U.S.C. § 255(a). A finding by the Court that an FLSA violation was willful, however, would under § 255(a) expand the statute of limitations to three years. The issues surrounding the statute of limitations in this case are somewhat complicated by the fact that the parties have misconstrued the effect of the application of either statute of limitations to the case. Throughout the case, both parties appear to have considered the difference between the two-year and three-year statutes of limitations to be the difference between two years and three years of liability for unpaid overtime. Such is not the nature of statutes of limitations, however, which pertain not to the scope of an action but to whether the action can be brought at all.
Because defendant's violation is of § 215(a)(3) and § 8 of the 1985 amendments, more specifically their prohibition of discrimination with respect to wages, the act constituting Clayton's violation was its decision to lower the firefighters' base hourly wage. This act occurred no later than April 15, 1986, when Clayton's new pay policy went into effect. The parties' confusion may arise out of a mistaken belief that Clayton has committed a violation of § 207(k), which might be thought to give rise either to a continuing violation or to a new cause of action with each paycheck. The Court has earlier clarified, however, that Clayton's violation is of the anti-discrimination provisions, not the overtime provision of § 207 itself. Returning to the statute of limitations, the appropriate question is whether plaintiffs filed this action within two or three years, whichever is applicable under § 255, from the date on which the cause of action arose, i.e., a date no later than April 15, 1986.
A careful survey of the few firefighter/§ 215(a)(3) cases touching upon the statute of limitations or related issues bears this out. Most directly on point is Hendrix v. City of Yazoo City, Mississippi, 744 F.Supp. 1412 (S.D.Miss.1989), in which Judge Lee, after a lengthy and careful analysis of the issue, granted the defendant-city's motion to dismiss on statute of limitations grounds, because the suit was filed three years and one month after the date on which the wage reduction became effective. In Craven v. Minot, 730 F.Supp. 1511 (D.N.D.1989), the city's decision to reduce wages was implemented on May 6, 1985, and the firefighters' action filed March 14, 1988, within three years but not within two. Based on a finding that the city's violation was willful so that the applicable statute of limitations was three years, the court rejected the city's assertion that the case was time-barred.
*1415 The complaint in this case having been filed on June 6, 1990, it is clear that if either the two-year or three-year period applies, plaintiffs did not timely file. Fortunately for plaintiffs, this is not the end of the matter:
Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. This proposition has been announced by numerous federal courts in cases involving a variety of affirmative defenses, including ... statute of limitations.
5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1278, pp. 477-484 (1990). See, e.g., United States Postal Service v. American Postal Workers Union, 893 F.2d 1117, 1122 (9th Cir.1990); Davis v. Bryan, 810 F.2d 42, 44 (2nd Cir.1987); Peterson v. Air Line Pilots Ass'n, International, 759 F.2d 1161, 1164 (4th Cir.1985).
While it is true that defendant has throughout this litigation argued, based on the statute of limitations, that its liability should be limited to two years' worth of unpaid overtime, this argument is, as the Court has earlier explained, entirely misplaced. At no time has defendant pled or argued to this Court that plaintiffs' action is altogether barred. At this late stage, to construe defendant's erroneous argument as an appropriate assertion of the affirmative defense of the statute of limitations would be contrary to the waiver rule as well as unfair to plaintiffs.
The upshot of the foregoing discussion, then, is that the statute of limitations, and the related issue of defendant's willfulness, have no bearing whatsoever on this case, and particularly not on the question of the scope of relief, as the parties mistakenly thought. Instead of being limited to either two or three years before the filing of the complaint, under § 216(b) such damages are to be awarded as the Court deems appropriate to effectuate the purposes of § 15(a)(3), "including without limitation ... the payment of wages lost." The Court finds damages in the nature of back pay to be appropriate, and agrees with the court in Hill v. City of Greenville, 696 F.Supp. 1123 (N.D.Tex.1988), that defendant is liable for under-paid overtime dating back to the date on which the discriminatory pay plan was implemented, April 15, 1986.

Calculation of Damages
At trial, Clayton objected to any consideration of evidence concerning damages for overtime dating from the date on which the complaint was filed, arguing that any such damages are beyond the scope of the case. The Court sustained the objection, confident that Clayton would, consonant with the Court's ruling in the case, retroactively correct any error in the overtime compensation paid after the filing of the complaint.[5] In sum, the Court must calculate plaintiffs' damages from April 15, 1986 through the filing of the complaint on June 6, 1990.
Because of the parties' mistaken belief that the relief in this case would not involve pay dating back to 1986, the Court does not now have before it any documentation regarding such pay. The Court must, then, defer the entry of judgment for damages until such time as the parties file supplemental exhibits showing plaintiffs' hours and pay dating back to April 15, 1986, and the parties' calculations therefrom of overtime owed each plaintiff. The Court this day announces only its decision as to defendant's liability and the temporal scope thereof. The parties are granted fifteen days in which to file additional documentation as to overtime owing, along with supplemental memoranda not to exceed five pages addressing the proper calculation of not only damages but pre-judgment interest thereon. Plaintiff, being entitled under § 216(b) to a reasonable attorney's fee, is also ordered to file its application for attorney's fees with supporting documentation. Thereafter, the Court will enter final judgment as to damages.

*1416 ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant's unilateral reduction of plaintiffs' base hourly wage as of April 15, 1986, violated § 8 of the 1985 Amendments to the Fair Labor Standards Act and 29 U.S.C. § 215(a)(3), and that defendant is, pursuant to 29 U.S.C. § 216(b), liable to plaintiffs for unpaid overtime from April 15, 1986 through June 6, 1990, as well as a reasonable attorney's fee and costs.
IT IS FURTHER ORDERED that each party shall file, within fifteen (15) days of the date of this order, additional documentation as to plaintiffs' hours and pay dating back to April 15, 1986 and the parties' calculations therefrom of overtime owed each plaintiff, as well as a memorandum not to exceed five pages addressing the proper calculation of both damages and pre-judgment interest.
IT IS FURTHER ORDERED that plaintiffs shall, within fifteen (15) days of the date of this order, file with the Court and serve on defendant their application for attorney's fees with supporting documentation. Defendant may, within five (5) days of receipt of the application, file any objections thereto.
NOTES
[1] Plaintiff's initial request for equitable relief has been withdrawn. See p. 26 of Plaintiff's Post-Trial Brief.
[2] In pertinent part, § 8 provides:

A public agency which is a ... political subdivision of a State and which discriminates ... against an employee with respect to the employee's wages or other terms or conditions of employments because on or after February 19, 1985 [the date Garcia was issued], the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(a)(3) of such Act.
[3] The complaint also mentions § 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), the general non-discrimination provision. Section 8 of the 1985 amendments specifically provides that a public agency found to have violated the strictures of § 8 "shall be held to have violated § 15(a)(3)."
[4] The Court notes that, were it called upon to make a finding with respect to good faith, it would hold, in light of all the facts and circumstances demonstrated by the evidence, that Clayton's actions giving rise to liability were taken in good faith and with reasonable grounds for believing that they were not in violation of the FLSA as amended.
[5] Clayton has, in fact, represented to the Court its efforts in this regard:

Having acknowledged above that its method of calculating overtime compensation has been declared improper, Defendant has taken steps to correctly compensate all of its fire-fighters for all overtime worked from the filing of this suit through September 31, 1990, the end of Defendant's fiscal year. Commencing October 1, 1990, Defendant has revised its overtime compensation policy so as to be in full compliance with the FLSA.