No. 94-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

---

MICHAEL A. TEFFT, EDWARD C. PETERS,
JOSEPH E. GASPAR, NANCI ELLEN GREEN,
RANDY J. ARCHERY, JOSEPH M. McKAMEY,
GEORGE L. DOMME, MICHAEL D. CROSS,
MICHAEL E. HEISLER, and JACK C. STIMAC,

    Plaintiffs and Respondents,

  v.

THE STATE OF MONTANA,

    Defendant and Appellant.

**FILED**

MAY 4 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        W. D. Hutchinson, Assistant Attorney General,
        Agency Legal Services Bureau, Helena, Montana

    For Respondents:

        Lawrence A. Anderson, Attorney at Law,
        Great Falls, Montana

---

        Submitted on Briefs:  January 19, 1995

               Decided:  May 4, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiffs, who are firefighters employed by the Montana Air National Guard in Great Falls, filed this action in the District Court for the Eighth Judicial District in Cascade County to recover wages due from the defendant, State of Montana, and liquidated damages for violation of the Federal Fair Labor Standards Act (FLSA). The District Court granted plaintiffs' motion for partial summary judgment and held that the State violated the FLSA when it reduced plaintiffs' wages and that its actions were not taken in good faith. After a nonjury trial, the District Court found the amount of wages and damages due, and entered judgment in favor of plaintiffs for that amount. The State appeals from the District Court's order granting summary judgment and the amount of damages awarded. We affirm the judgment of the District Court.

We restate the issues on appeal as follows:

1. Did the District Court err when it granted plaintiffs' motion for summary judgment?

2. Did the District Court abuse its discretion when it awarded liquidated damages under 29 U.S.C. § 216(b) (1988) of the Fair Labor Standards Act?

3. Were the District Court's findings regarding the amount of plaintiffs' damages clearly erroneous?

## FACTUAL BACKGROUND

Plaintiffs are firefighters who provide protection for civilian aircraft and a unit of the Montana Air National Guard at the Great Falls International Airport. Prior to 1975, they were employed by the federal government. In 1975, when the federal firefighting jobs were discontinued, plaintiffs were employed by the Montana Department of Military Affairs. However, through a cooperative arrangement, the federal government still paid for most of the costs associated with their jobs.

After the State established the fire crew jobs in 1975, plaintiffs' salaries were based on the State's statutory pay matrix. Section 2-18-312, MCA. The State initially paid plaintiffs biweekly for 80 hours of work during each two week period. However, plaintiffs' actual schedules had them working 24 hour shifts, followed by 48 hours off duty. Therefore, they worked substantially more hours during each two week period than the 80 hours for which they were paid. They actually worked between 96 and 120 hours during a two week period, and 2912 hours per year, but were paid on the basis of a 2080 hour year. The State failed to pay them for the actual time worked, or to keep accurate records of their time at work.

In 1982, the State began to reflect actual hours worked on plaintiffs' time cards, but plaintiffs were still paid for only 80 hours of work biweekly. During a brief period from 1985 to 1986, the State began to pay plaintiffs for the actual hours they

3

worked. However, to avoid overtime requirements, the State added an additional day off, or "Kelly day," for each pay period. One count of plaintiffs' complaint, the "straight time" claim, was a claim for wages for those hours worked, but for which they were not paid, between 1979 and 1985. In separate litigation, plaintiffs settled claims for overtime compensation during this period.

In 1985, the United States Supreme Court reversed previous case law which excluded state jobs from coverage under the federal Fair Labor Standards Act. *See Garcia v. Metropolitan Transit Authority* (1985), 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016. As a result, FLSA provisions became binding on state and local governments.

The FLSA provides that a firefighter must be paid at the overtime rate if the firefighter's tour of duty exceeds 212 hours in 28 days. 29 U.S.C. § 207 (1988); 29 C.F.R. § 553.201 (1993). Plaintiffs' hours consistently exceeded this number, with the exception of the period from September 1985 to July 1986.

Following *Garcia*, Congress passed two amendments to the FLSA. The first amendment eased the financial burden on state and local governments by exempting them from liability for FLSA violations that occurred before April 15, 1986. Pub. L. No. 99-150, 99 Stat. 787, § 2(c) (29 U.S.C. § 216 note (1988) (Effect of Amendments by Public Law 99-150 on Public Agency Liability Respecting any Employee Covered Under Special Enforcement Policy)); *see Hill v. City of Greenville* (N.D. Tex. 1988), 696 F. Supp. 1123, 1126. A second amendment enacted an anti-discrimination provision to deter state

4

and local governments from decreasing employees' wages to offset the increased overtime compensation requirement. Pub. L. No. 99-150, § 8, 99 Stat. 791 (29 U.S.C. § 215 note (1988) (Liability of Public Agency for Discrimination Against Employee for Assertion of Coverage)).

In response to *Garcia*, the Department of Military Affairs proposed changes in the manner in which firefighters were paid. However, the proposal was rejected by the State's Personnel Division on the basis that it deviated from the State pay matrix. The Department, therefore, requested an exclusion from the State's pay plan under § 2-18-103(6), MCA, which excludes officers or members of the militia. The State granted the exclusion by July 1986. Plaintiffs were required to be members of the National Guard and became part of a new class known as the Militia Protective Services, an exempt classification. We recently held that the requirement of National Guard membership was unconstitutional because the State could not establish a rational basis for it. *McKamey v. State* (Mont. 1994), 885 P.2d 515, 51 St. Rep. 1218.

Following this reclassification, the State reduced plaintiffs' hourly wages. The Kelly day was eliminated and plaintiffs were paid biweekly based on a reduced hourly wage multiplied by the number of hours actually worked. The new hourly wages were effectively determined by dividing each plaintiff's set annual salary by 2912 hours instead of 2080 hours.

5

Plaintiffs filed a complaint, and later an amended complaint, that demanded lost compensation for (1) unpaid "straight time," and (2) discrimination in violation of the FLSA based on the State's reclassification. Plaintiffs contended they were entitled to unpaid wages and were entitled to liquidated damages pursuant to the FLSA, based on the State's reduction of their wages in response to the *Garcia* decision. The plaintiffs moved for and received summary judgment on the FLSA claim. In its order, the District Court held that the State had failed to raise a factual issue regarding its violation of the Act, or whether it acted in good faith when it reduced plaintiffs' wages. Accordingly, the court held that plaintiffs were entitled to liquidated damages.

The District Court ordered a hearing on the remaining issues, including the amount of damages, and the State was allowed to submit additional proof of good faith and reasonable grounds for its actions. Both parties offered expert testimony regarding damage calculations. The State failed to offer evidence satisfactory to the District Court that it had acted in good faith when it reduced plaintiffs' wages. The District Court found plaintiffs' damage calculations more reliable than the State's, and adopted plaintiffs' damage figures. On January 31, 1994, the District Court entered judgment against the State for $485,434.60.

## ISSUE 1

Did the District Court err when it granted plaintiffs' motion for summary judgment?

6

The nature of our inquiry when we review a district court's summary judgment decision is identical to the trial court's. *Cooper v. Sisters of Charity* (1994), 265 Mont. 205, 207, 875 P.2d 352, 353 (citing *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; *Spain-Morrow Ranch, Inc. v. West* (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32.

In 1985, the United States Supreme Court decided *Garcia*, which applied the minimum-wage and overtime provisions of the FLSA to state employees. In order to minimize financial impact on state and local governments, Congress enacted amendments to the FLSA. *Hill*, 696 F. Supp. at 1125. Congress also enacted what is referred to as § 8 to prohibit governmental discrimination against employees who are entitled to financial benefits as a result of *Garcia*. 29 U.S.C. § 215 note (1988), Pub. L. No. 99-150, § 8, 99 Stat. 791. Section 8 provided:

> A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 [29 U.S.C. § 207] shall be held to have violated section 15(a)(3) of such Act [29 U.S.C. § 215(a)(3)]. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986, only for an employee who takes an action described in section 15(a)(3) of such Act.

7

Section 7 sets forth the number of hours after which firefighters must be paid overtime. 29 U.S.C. § 207 (1988). Section 215(a)(3) makes it unlawful for any person to discriminate against an employee because the employee has filed a complaint or instituted a proceeding under the FLSA. 29 U.S.C. § 215(a)(3) (1988).

The District Court's order correctly noted that the State conceded, in its brief in opposition to plaintiffs' motion for summary judgment, that it reduced plaintiffs' hourly wages in response to *Garcia* and to avoid increasing annual pay. Other courts have concluded that discrimination in violation of the FLSA occurs under these circumstances. *See Drollinger v. State of Arizona* (9th Cir. 1992), 962 F.2d 956; *Blanton v. City of Murfreesboro* (6th Cir. 1988), 856 F.2d 731; *Hill*, 696 F. Supp. 1123. In *Drollinger*, the Ninth Circuit Court of Appeals concluded that Arizona violated § 8 as a matter of law when it lowered hourly wage rates for firefighters as a response to *Garcia*. *Drollinger*, 962 F.2d at 957-59.

The State argues that the District Court erroneously decided that the State's "reclassification" plan violated § 8 of the FLSA amendments, and 29 U.S.C. § 215(a)(3). First, the State claims that it did not discriminate against plaintiffs because they asserted coverage under the FLSA. Instead, the State contends that it lawfully responded to budgetary constraints. The District Court rejected the State's "economic necessity" defense.

Other courts have rejected an "economic necessity" defense in similar circumstances. *See Blanton*, 856 F.2d at 735; *Hill*, 696 F. Supp.

8

at 1126. The court in *Hill* recognized that congressional amendments were designed to delay the impact of the FLSA overtime provisions to give state and local governments sufficient time to rearrange their budgets in order to comply with the FLSA. *Hill*, 696 F. Supp. at 1126. In *Blanton*, the Eighth Circuit Court of Appeals rejected an economic necessity defense where a city decreased its firefighters' wages.

> Actions by public employers to reduce employee pay and benefits, taken as the sole and direct result of fiscal pressures created by the mandated extension of Fair Labor Standard Act benefits, run afoul of the strictures of section 8.

*Blanton*, 856 F.2d at 735. In order to justify a reduction based on economic necessity, an employer must prove that wages were reduced from fiscal concern which was not attributable to the extra cost of complying with the FLSA. *Blanton*, 856 F.2d at 735.

We too reject the State's assertion of an economic necessity defense. The State argues that the federal government provided funding for plaintiffs' salaries, and after *Garcia* the State did not receive additional funding. However, the District Court stated, and we agree, that the State failed to establish that it could not augment federal funds with state funds, or implement a different plan, without violating the FLSA.

The State also argues that plaintiffs did not assert FLSA violations until 1988, and therefore, that the State could not have reclassified plaintiffs in response to their assertion of coverage

9

under the Act in violation of §§ 8 and 215(a)(3).[1]  Section 215(a)(3) makes it unlawful for the State to discriminate against an employee because the employee has filed a complaint or instituted or caused to be instituted any proceeding under the FLSA.  29 U.S.C. § 215(a)(3) (1988).

In *Drollinger*, the Ninth Circuit rejected an argument similar to the State's when it held that:

> [T]he FLSA prohibits not only FLSA violations in response to employee assertions of coverage, but also FLSA violations in *anticipation* of assertions of coverage: any other interpretation would nullify the Act's protections. Section 8 would be meaningless if an employer were permitted to reduce hourly wages in response to *Garcia* and thereby avoid the FLSA's pay-and-a-half provisions as long as he did so before his employees learned of their statutory entitlements and had a chance to request that they be afforded the benefits due them.

*Drollinger*, 962 F.2d at 958, n.2.

Likewise, the Eighth Circuit in *Blanton* resolved this issue against a city which asserted a similar argument.  That court cited legislative history for the proposition that employers' actions to decrease wages that are intended to avoid the FLSA constitute discrimination under § 8, whether or not they are in response to

---

[1]  While this contention may be technically correct, it is not correct as a practical matter.  It is true that on March 21, 1988, the District Court first granted plaintiffs' motion to amend their complaint in *Stimac v. State of Montana*, Cascade County Cause No. BDV-84-1570, regarding overtime and allege a claim based on the FLSA.  However, the motion to allow that amendment was filed on June 6, 1986.  The reduction in wages was authorized on June 19, 1986, and was actually implemented during July 1986.

employee assertions of coverage. *Blanton*, 856 F.2d at 736. The Eighth Circuit added that:

> [I]t is not necessary to prove the employer intended to retaliate to prove a violation of section 8 if an employer, such as the City of Murfreesboro, reduced its employees' rates of pay so as to nullify the effect of extending the Act's coverage.

*Blanton*, 856 F.2d at 736. Finally, in *Hill*, the court recognized that an assertion of coverage need only be some act that would give the employer notice that employees are covered by the FLSA. That court added that where the employer already had notice that employees were covered by the FLSA, it would be superfluous to require the employees to affirmatively notify their employer that they are covered by the FLSA. *Hill*, 696 F. Supp. at 1125.

The State has conceded that it had actual notice that the FLSA covered plaintiffs as early as July 1985. Therefore, as the court stated in *Hill*, further notice in the form of a claim by its employees was unnecessary.

Finally, the State asserts that the plaintiffs "ratified" the wage cuts when they signed agreements that reduced their hourly wage. However, the United States Supreme Court has held that employees' rights under the FLSA cannot be abridged by contract or otherwise because it would defeat the purpose of the FLSA. *Barrentine v. Arkansas-Best Freight System* (1981), 450 U.S. 728, 739-40, 101 S. Ct. 1437, 1444-45, 67 L. Ed. 2d 641, 652-53.

For these reasons, we conclude that the uncontroverted evidence established a violation of the federal Fair Labor

11

Standards Act by the State of Montana, and that the District Court did not err when it granted plaintiffs' motion for summary judgment on that issue.

## ISSUE 2

Did the District Court abuse its discretion when it awarded liquidated damages under 29 U.S.C. § 216(b) (1988) of the Fair Labor Standards Act?

What constitutes good faith and reasonable grounds, as those notions relate to the issue of liquidated damages, involves mixed questions of law and fact. To the extent that legal principles are involved, the standard of review is *de novo*, but to the extent that factual issues are involved, we will reverse the district court only for clear error. *Bratt v. County of Los Angeles* (9th Cir. 1990), 912 F.2d 1066, 1071, *cert. denied* (1991), 498 U.S. 1086. The State argues that the District Court erred when it awarded liquidated damages and decided that the State did not prove it acted in good faith or on reasonable grounds. We note that despite its summary judgment decision, which awarded liquidated damages, the District Court allowed the State to submit evidence of good faith and reasonable grounds at the hearing, but found that it either had not done so, or that its evidence was insufficient.

As set forth above, § 8 violations are deemed violations of 29 U.S.C. § 215(a)(3). The damage provision for these violations provides in relevant part:

> Any employer who violates the provisions of section 15(a)(3) of this Act shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (1988). However, 29 U.S.C. § 260 states that in claims to recover damages under the FLSA:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its sound discretion, award no liquidated damages . . . .

*See also Bratt*, 912 F.2d at 1071. The State acknowledges that an employer has the burden of proving that its violation of the FLSA was in good faith and that the employer had reasonable grounds to believe it did not violate the FLSA. *See E.E.O.C. v. First Citizens Bank of Billings* (9th Cir. 1985), 758 F.2d 397, 403, *cert. denied* (1985), 474 U.S. 902.

Courts have utilized different standards to determine what constitutes good faith and reasonable grounds. *Compare Kinney v. District of Columbia* (D.C. Cir. 1993), 994 F.2d 6, 12, *and Bratt*, 912 F.2d at 1072, *with Walton*, 786 F.2d at 312. As discussed below, we conclude that the Fifth Circuit's test to determine good faith and reasonable grounds based on an objective standard is more reliable.

Judge Easterbrook, writing for the court in *Walton*, stated that the correct standard is the one provided by the statute:

13

> [W]hether the employer's conduct--objectively viewed through the lens of the "reasonable man" famous in tort law--acted "in good faith and . . . had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.

*Walton*, 786 P.2d at 312. The *Walton* court concluded that the objective standard was especially appropriate in claims against corporate or governmental employers which do not have an actual mental state. *Walton*, 786 F.2d at 312. That court added that a decision made aboveboard and justified in public is more likely to satisfy the test. *Walton*, 786 F.2d at 312. Double damages are meant to be the norm and not the exception. *Walton*, 786 F.2d at 310. In addition, double damages are partly designed to compensate for concealed violations. Utilizing these damages when concealed violations are detected presents employers with the full costs of their actions, a goal stressed in the legislative history of the double damage provision. *Walton*, 786 F.2d at 312.

We have already concluded that overwhelming evidence supported "the conclusion that the [State's military service] requirement's sole purpose [was] to circumvent the wage and overtime standards set forth in the Fair Labor Standards Act . . . ." *McKamey*, 885 P.2d at 522.

In its summary judgment order, the court mentioned that the State's decision to reduce plaintiffs' wages and eliminate them from the State's pay plan was not made aboveboard nor justified to the public. The court added that the militia exception was frivolous and a subterfuge designed to avoid legal obligations

14

imposed by the FLSA. Other factors the court found persuasive are: the State was aware of *Garcia's* ramifications, other available alternatives were not pursued, the State unilaterally declared plaintiffs exempt from the State pay plan, and the State did not inform plaintiffs of its decision to do so. The record supports the District Court's findings.

Based on our decision in *McKamey*, and evidence cited by the District Court, we conclude that the District Court was not clearly erroneous, did not abuse its discretion, and did not err as a matter of law when it found and concluded that plaintiffs were entitled to liquidated damages under § 216, and that the State did not objectively demonstrate good faith or reasonable grounds under § 260.

### ISSUE 3

Were the District Court's findings regarding the amount of plaintiffs' damages clearly erroneous?

"A district court's damage determination is a factual finding which must be upheld if it is supported by substantial evidence; we will not overturn a district court unless its determination was clearly erroneous." *Semenza v. Bowman* (Mont. 1994), 885 P.2d 451, 455, 51 St. Rep. 1209, 1212 (citing *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). We rely on a three-part test to determine if a finding is clearly erroneous. First, we review the record to ensure the findings are supported by substantial evidence. Second, if there is an evidentiary basis for the

15

finding, we consider whether the district court misapprehended the effect of the evidence. Third, if the other two criteria are satisfied, we may still determine that a finding is clearly erroneous when a review of the record leaves the Court with a firm conviction that a mistake has been made. *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

The District Court's findings were based on conflicting expert testimony. The trial judge has the duty to resolve conflicts in evidence and this Court gives due regard to the trial judge's superior opportunity to judge the credibility of witnesses. *Williams v. DeVinney* (1993), 259 Mont. 354, 359, 856 P.2d 546, 549. A district court is "not bound by the opinion of a particular party or expert but remains free to adopt any reasonable valuation that is supported by the record." *Goodover v. Lindey's* (1992), 255 Mont. 430, 440, 843 P.2d 765, 771 (citing *In re Marriage of Dzivi* (1991), 247 Mont. 165, 167, 805 P.2d 567, 568).

In its brief, the State concedes that substantial evidence supports the District Court's "straight time" wage award, but argues that a review of the record leads to a conclusion that the District Court misapprehended the evidence and made a mistake. Specifically, the State attacks the adequacy of the foundation for the testimony of the plaintiffs' damage expert. However, the foundation was made difficult by the State's failure to maintain accurate records of the hours worked by the plaintiffs.

The District Court recognized that the State breached its duty to properly account for the hours plaintiffs actually worked, and therefore, that plaintiffs were entitled to substantiate their claim without precise time records. *See Wage Claim of Holbeck v. Stevi-West, Inc.* (1989), 240 Mont. 121, 125-26, 783 P.2d 391, 394 (citing *Garsjo v. Department of Labor and Industry* (1977), 172 Mont. 182, 188-89, 562 P.2d 473, 476).

*Garsjo* relied on language from a United States Supreme Court case discussing the difficulty an employee confronts when an employer keeps insufficient records. *Garsjo*, 562 P.2d at 476 (citing *Anderson v. Mt. Clemens Pottery Co.*, (1946), 328 U.S. 680, 687, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515, 1523. In *Anderson*, 328 U.S. at 687-88, the United States Supreme Court reasoned:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such

17

evidence, the court may then award damages to the employee, even though the result be only approximate.

In *Garsjo*, we also quoted similar reasoning from the Michigan Supreme Court, which held that:

"When the employee shows, as he did here, 'that he did in fact perform overtime work for which he was not properly compensated and produces sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the evidence of the employee. And if the employer fails to produce such evidence, it is the duty of the court to enter judgment for the employee, even though the amount be only a reasonable approximation.'"

*Garsjo*, 562 P.2d at 476-77 (quoting *Purcell v. Keegan* (Mich. 1960), 103 N.W.2d 494, 497).

Each party used a different approach to determine the unpaid "straight time" claim based on the available data. Plaintiffs' expert assumed that each plaintiff worked a standard schedule of 2912 hours per year and used this figure as a ceiling to compute unpaid "straight time" for each year. He used the total hours worked, minus total overtime paid from settlement of the previous suit, minus "straight time" hours paid, to determine unpaid "straight time" hours. Plaintiffs' expert then multiplied the unpaid "straight time" with the hourly pay rate for the year in question to determine the amount of damages.

The State's expert challenged the use of a 2912 hour average ceiling and noted that in later years when more accurate time cards were used, records indicated some plaintiffs took leave without

18

pay. As a result, the total for each plaintiff may not have been exactly 2912 hours.

The trial court criticized this approach, stating that if the State was going to use this approach it should have used the most reliable records, which were after 1986. However, the State did not explain its failure to use these records. The records used by the State showed that plaintiffs averaged approximately 2700 hours per year. However, after 1986, records reflected that plaintiffs averaged approximately 2900 hours per year. The court found plaintiffs' formula "reasonable in light of the lack of other records to come to more accurate figures."

The other damage issue involves the FLSA claim. As noted above, in 1986 the State recomputed each plaintiff's hourly wage by dividing his or her annual salary by 2912, instead of 2080 as required by statute. Sections 2-18-306, -312, MCA. The District Court's Conclusion of Law No. 7 noted that the State's method was illegal.

Plaintiffs' expert compared 2080 hours to 2912 hours to arrive at a factor of .714, which he then used to arrive at the total amount by which plaintiffs were underpaid. The State argues that plaintiffs' expert should have audited actual records, instead of using the formula. Plaintiffs respond that this could not be done because of inaccurate record keeping by the State.

The State's expert testified that he based his calculations on an audit of payroll records. However, the District Court noted

numerous errors in his method, several of which the State's expert admitted during cross-examination.

Plaintiffs introduced evidence that they worked hours for which they were not properly compensated. Plaintiffs produced sufficient evidence of the amount of uncompensated work, based on reasonable inferences, to entitle them to damages based on a reasonable approximation. The District Court found that the State failed to produce sufficient evidence of the precise amount of work performed, or to negate the inference produced by the plaintiffs. The District Court is in a better position than this Court to reconcile contradictory expert testimony. Based on our review of the record, we are not convinced the District Court misapprehended the evidence, nor are we convinced the District Court made a mistake. Therefore, we conclude that the District Court's damage calculations were not clearly erroneous.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

20