No. 94-180

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JOSEPH M. McKAMEY,

       Plaintiff, Respondent
       and Cross-Appellant,

v.

STATE OF MONTANA,

       Defendant, Appellant
       and Cross-Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Charles E. Erdmann, Erdmann Law Office,
              Helena, Montana

       For Respondent:

              Timothy J. McKittrick, McKittrick Law Firm,
              Great Falls, Montana

FILED

NOV 29 1994

Filed: _Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: October 13, 1994

Decided: November 29, 1994

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The State of Montana appeals from a judgment of the District Court for the Eighth Judicial District, Cascade County. That court declared unconstitutional a requirement that firefighters employed by the State of Montana at the Montana Air National Guard base in Great Falls, Montana, be members of the Montana Air National Guard. We affirm.

The issues are:

1. Did the District Court err in refusing to dismiss this case on grounds that it does not constitute a case or controversy?

2. Did the court err in refusing to dismiss on grounds that McKamey failed to exhaust his administrative remedies?

3. Did the court err in refusing to dismiss on grounds that the challenged policy is a discretionary military policy over which district courts have no subject matter jurisdiction?

4. Did the court err in granting McKamey's motion to quash and for a protective order?

5. Did the court err in granting summary judgment that the military service requirement is unconstitutional?

6. Did the court err in denying McKamey attorney fees and costs?

Joseph McKamey is one of nineteen firefighters employed at the Great Falls International Airport as civilian employees of the State of Montana, Department of Military Affairs. McKamey's job includes providing protection for civilian aircraft and for a unit of the Montana Air National Guard stationed at the airport.

2

Before 1975, these firefighters were federal civilian employees. In that year, the federal positions were eliminated and the National Guard Bureau agreed to provide funding to allow the State of Montana to hire the firefighters as state employees.

Until 1986, the firefighters were scheduled to work "Kelly shifts" of 24 hours on and 48 hours off. This schedule placed them on duty for 65 hours in some weeks, 55 hours in other weeks, and 48 hours in the remaining weeks. However, their pay did not vary according to the hours worked, and they were not paid overtime compensation.

In 1984, McKamey and nine other firefighters filed a wage action against the State, claiming their employment arrangement violated the Montana Wage and Overtime Compensation Act, §§ 39-3-401 through -409, MCA. In 1985, the United States Supreme Court ruled that state employees enjoy the protection of the Fair Labor Standards Act. See Garcia v. San Antonio Metro. Transit Auth. (1985), 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016. The firefighters added that Act as a second basis for their claims. That action has been settled. See Stimac v. State (1991), 248 Mont. 412, 812 P.2d 1246.

In 1985, the Department of Military Affairs sought approval of a pay plan for the firefighters at the Great Falls airport which deviated from the State Compensation Plan. That plan was not approved. In June of 1986, the Personnel Division of the State of Montana endorsed an exemption from wage requirements for the firefighters. This exemption was premised upon a policy requiring

these firefighters, as a condition of their employment, to be members of the Montana Air National Guard. Section 2-18-103, MCA, exempts certain types of positions **from** the wage requirements of the State Compensation Plan, among them "officers or members of the militia."

McKamey and nine other firefighters filed a second wage action against the State in 1989. The decision in that action is now on appeal to this Court (Tefft et al. v. State, Montana Supreme Court Cause No. 94-229).

In February 1992, McKamey filed this action seeking declaratory, injunctive, and equitable relief declaring the State's **military** service requirement discriminatory and violative of his employment rights and the rights of other state employees similarly situated. Following discovery and briefing, the District Court heard the parties' cross-motions for summary judgment. The court issued an extensive memorandum and order granting McKamey's motion for summary judgment on grounds that the requirement violated the firefighters' rights to equal protection and to due process. The court enjoined the State from using the military service requirement in any manner relative to McKamey or employees similarly situated. It ordered each party to pay its own attorney fees and costs. The State appeals. McKamey cross-appeals on the issue of attorney fees.

## Issue 1

Did the District Court err in refusing to dismiss this case on grounds that it does not constitute a case or controversy?

Because McKamey does not claim he has already suffered a penalty from the military service requirement, the State maintains he is not entitled to a declaratory judgment. According to the State, a declaratory judgment at this point would be an advisory opinion based on a possible future occurrence. The State maintains no case or controversy exists, citing cases in which this Court has ruled that issuance of a declaratory judgment was not proper because no case or controversy was presented.

Section 27-8-201, MCA, grants Montana courts the power to render declaratory judgments:

> Scope of power to render declaratory judgments. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

Section 27-8-202, MCA, provides:

> Who may obtain declaratory judgment. Any person interested under a . . . written contract . . . or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder.

Section 27-8-203, MCA, states that a contract may be construed either before or after there has been a breach thereof. In addition, § 27-8-205, MCA, provides:

> The enumeration in 27-8-202 through 27-8-204 does not limit or restrict the exercise of the general powers conferred in 27-8-201 in any proceeding where declaratory relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty.

Pursuant to the above statutes, it is not necessary that McKamey have already suffered an injury before seeking relief in the form of a declaratory judgment.

McKamey filed an affidavit with the District Court in which he states that one of the other firefighters, Edward Peters, was terminated from his employment as a firefighter after he retired from the Montana Air National Guard. McKamey states that the reason given for Peters' termination was the military service requirement. In his affidavit, McKamey goes on to say that, based on Peters' experience, he feels his own right to retire from the Montana Air National Guard has been threatened. He states that if his employment is terminated, his family will have no income, insurance, or other benefits, and his pension benefits will be severely reduced.

This Court has stated that a declaratory judgment suit against a government entity must be supported by allegations of past, present, or threatened injury to a property or civil right, and the alleged injury must be distinguishable from the injury to the public generally. Stewart v. Bd. of Cty. Com'rs of Big Horn Cty. (1977), 175 Mont. 197, 201, 573 P.2d 184, 186. Under the administrative policy now in effect, McKamey's civilian employment as a firefighter is threatened if he resigns or retires from the Montana Air National Guard. The existence of a case or controversy is amply demonstrated by the multiple lawsuits concerning the firefighters' employment status.

We hold that the requirement of a threatened injury has been met and that a case or controversy exists. We further hold that the District Court did not err in refusing to dismiss this action as inappropriate for declaratory judgment.

## *Issue 2*

Did the court err in refusing to dismiss on grounds that McKamey failed to exhaust his administrative remedies?

The State argues district courts are without discretion to proceed under the Uniform Declaratory Judgments Act where the claimant has available administrative remedies, citing Roeber v. State, Dept. of Institutions (1990), 243 Mont. 437, 795 P.2d 424. However, when a claimant raises a bona fide constitutional claim in a declaratory judgment action, the exhaustion doctrine does not apply. Mitchell v. Town of West Yellowstone (1988), 235 Mont. 104, 109-10, 765 P.2d 745, 748. We hold that the District Court did not err in denying the State's motion to dismiss.

## Issue 3

Did the court err in refusing to dismiss on grounds that the challenged policy is a discretionary military policy over which district courts have no subject matter jurisdiction?

Citing Martelon v. Temple (10th Cir. 1984), 747 F.2d 1348, cert. denied, 471 U.S. 1135, and *Olson* v. Nat. Guard (1972), 160 Mont. 387, 503 P.2d 24, the State maintains that the military service requirement is a discretionary state military policy and, as such, is outside the jurisdiction of the courts.

However, there are exceptions to this rule.

7

> [W]hen presented with claims of judicially cognizable injury resulting from military intrusion into the civilian sector, federal courts are fully empowered to consider claims of those asserting such injury; there is nothing in our Nation's history or in the Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied.

Laird v. Tatum (1972), 408 U.S. 1, 15-16, 92 S.Ct. 2318, 2327, 33 L.Ed.2d 154, 165.

As the above quotation indicates, courts will intervene when a military decision intrudes into the public sector. The opinion in <u>Martelon</u> illustrates this point. The <u>Martelon</u> opinion was dependent on the court's determination that the plaintiffs' claims were "clearly related to military employment." <u>Martelon,</u> 747 F.2d at 1350. The court contrasted <u>Martelon</u> with a New Jersey case in which a federal district court intervened after finding that the plaintiffs' claims were incident to their civilian, not their military, employment.

In the present case, we agree with McKamey's assessment that the State has not demonstrated that the military service requirement is related to military policy. The State concedes that the military service requirement is not imposed on firefighters in other states. In fact, a 1993 Federal Air National Guard Bureau operational guide, a copy of which McKamey filed in connection with his motion for summary judgment, states: "MANDATORY MILITARY MEMBERSHIP FOR O&M FIREFIGHTERS IS NOT RECOMMENDED."

We hold that the District Court did not err in refusing to dismiss this case on grounds that the challenged policy is a

discretionary military policy over which district courts have no subject matter jurisdiction.

## Issue 4

Did the court err in granting McKamey's motion to quash and for a protective order?

This issue relates to requests by the State for production of documents at the depositions of three witnesses for McKamey. The witnesses were members of the firefighters' union to which McKamey belongs. The State asked those three witnesses to produce, at their depositions:

> Correspondence of any kind between yourself and the State of Montana from 1974 through the present: correspondence of any kind between yourself and the Montana Air National Guard from 1969 through the present; all bills, reports, business records and minutes of meetings, information letters or other documents of the Great Falls Airport Firefighters Association, International Association of Firefighters Local #3261; billing statements from McKittrick Law Firm to this Union and all check stubs, registers, cancelled checks, or receipts showing payment for services of McKittrick Law Firm for the last 4 years.

Arguing that the requested materials were irrelevant to a declaratory judgment action and that the requests were overbroad and unlikely to lead to discoverable evidence, McKamey moved to quash and for a protective order. He further argued that the request violated his right to privacy and invaded privileged business of the firefighters' union. Additionally, he alleged that the time allotted for responding to such requests was less than the thirty days required under Rules 30(b)(5) and 34(b), M.R.Civ.P.

Our standard of review concerning a district court's ruling on a discovery matter is whether the district court abused its

9

discretion. State of Or. ex rel. Worden v. Drinkwalter (1985), 216 Mont. 9, 12, 700 P.2d 150, 152. The above discovery request is overbroad in several respects. As McKamey points out, it would require production of twenty years' worth of correspondence with the State of Montana and four years' worth of correspondence with the named law firm, none of which may have anything whatsoever to do with this action. We hold that the District Court did not abuse its discretion in granting McKamey's motion to quash and for a protective order.

## Issue 5

Did the court err in granting summary judgment that the military service requirement is unconstitutional?

Here, we consider arguments raised by the State under two issues: whether there exist material issues of fact precluding summary judgment, and whether the District Court erred in declaring the military service requirement unconstitutional as a matter of law.

We first explore whether material issues of fact exist. The State argues that the date on which the military service requirement was adopted is a material fact as to which there is a dispute. The State views this date as a material fact because McKamey has argued that the military service requirement was adopted in retaliation for the wage and hour claim filed against the State by McKamey and other firefighters.

The District Court found overwhelming evidence that military service, while encouraged, was not mandatory for the firefighters

10

prior to 1986. However, if summary judgment is proper regardless of the retaliatory nature of the military service requirement, then the date on which that requirement was adopted is not a material fact barring summary judgment. McKamey's claim of unconstitutionality does not depend on the retaliatory nature of the military service requirement. We conclude that the retaliatory nature of the military service requirement is not a fact material to determination of the constitutionality of the military service requirement.

The principal purpose of the Equal Protection Clause, Amend. XIV, U.S. Const., and Art. II, Sec. 4, Mont. Const., is to ensure that persons who are citizens of this country are not subject to arbitrary and discriminatory state action. Godfrey v. Mont. State Fish & Game Com'n (1981), 193 Mont. 304, 306, 631 P.2d 1265, 1267. Courts examine the right to equal protection under three levels of scrutiny--strict scrutiny for classifications which infringe fundamental rights or involve suspect classifications, such as race or national origin: middle tier analysis in specific limited situations requiring a somewhat heightened scrutiny; and rational basis analysis, for all other classifications. Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 44-45, 776 P.2d 488, 502.

In this case, the District Court determined that the military service requirement did not meet the lowest of the three levels of scrutiny--the rational basis test. The inquiry under the rational basis test is whether the classification is rationally related to a legitimate government interest. Meech, 776 P.2d at 502-03.

11

In its analysis, the District Court reasoned:

[E]vidence which establishes that there is no rational basis for the military requirement policy is that the State of Montana treats its firefighters differently than other states in the country. If national security were the basis for mandatory membership in the Guard, then it is only logical that every state in the Union would require its firefighters to be members of the Guard. It is admitted by the State of Montana that mandatory membership in the Guard is a state by state decision. Since other states such as South Dakota, New Hampshire, Oregon and Iowa do not require its [sic] firefighters to be members of the Guard, it is apparent that national security is not a rational basis for guard membership.

As recently as October 19, 1993, the Federal National Guard Bureau in its Operational Guide for Air National Guard Operations and Maintenance Firefighters specifically stated on page 7, item 16A that:

"MANDATORY MILITARY MEMBERSHIP FOR O&M FIRE-FIGHTERS IS NOT RECOMMENDED."

Since the Federal National Guard Bureau has taken the affirmative stance that they do not recommend mandatory military membership, the State of Montana cannot establish a rational basis for the requirement. Furthermore, the State of Montana's *own* Fire Chief Ball, at the Great Falls Airport, stated in his letter dated February 27, 1992 to Major Shick, LTC Mortag and Mr. Booker that:

"c. Mandatory Membership in ANG: Since there is no longer an alert requirement, the reasons for requiring fire fighter MANG membership is no longer valid. If State employees are not members of the ANG, it would make deployments and activations less of a scheduling problem. If fire fighters were not required membership, there would be more openings for traditional Guardsmen. Eliminating current policy of mandatory enlistment in the ANG can be impact bargained into the present contract with IAFF and show no liability or admission of guilt by any party."

Both the National Guard Bureau and the State's own fire chief have stated that there is, in fact, no rational basis for [the] mandatory military requirement.

The State also argues that because of the secret nature of the military business, the firefighters need special security clearances and thus, must be members of the National Guard. To obtain a special security clearance, military membership is not a prerequisite. . . . There is no rational basis in terms of security clearance to require membership in the National Guard. There was evidence presented that at least two employees at the Great Falls Airport came in contact with classified military information and those employees were not required to be members of the Guard.

In short, the State failed to offer any compelling evidence that the military service requirement is rationally related to a legitimate government interest.

Similarly on appeal, the State has not offered any persuasive argument or evidence that the military service requirement is rationally related to a legitimate government interest. Instead, the evidence overwhelmingly supports the conclusion that the requirement's sole purpose is to circumvent the wage and overtime standards set forth in the Fair Labor Standards Act and the Montana Wage and Overtime Compensation Act.

We hold that the District Court did not err in ruling that the military service requirement fails to meet equal protection standards under the rational basis test, and is thus violative of both the United States and the Montana Constitutions. Having so ruled, we need not address the District Court's conclusion that the military service requirement also violates due process requirements.

Issue 6

Did the court err in denying **McKamey** attorney fees and costs?

13

Sections 25-10-711 and 27-8-311, MCA, are the authority under which McKamey argues he should have been awarded his attorney fees and costs. Section 25-10-711, MCA, allows the award of attorney fees to a party who prevails in a claim against a government entity in which "the court finds that the claim or defense of the state, political subdivision, or agency that brought or defended the action was frivolous or pursued in bad faith."

Section 27-8-311, MCA, allows the court to *allow* such costs in a declaratory judgment action "as may seem equitable and just." There is no provision for an award of attorney fees in an action for declaratory judgment. State ex rel. Dept. of Health v. Lincoln Cty. (1978), 178 Mont. 410, 418, 584 P.2d 1293, 1297-98.

An award of attorney fees and costs is within the discretion of the trial court. Armstrong v. State, Dept. of Justice (1991), 250 Mont. 468, 469, 820 P.2d 1273, 1274. After reviewing the record, we conclude the District Court did not abuse its discretion in determining that the State's defense was not frivolous or pursued in bad faith, and in denying McKamey's request that he be awarded his attorney fees and costs.

Affirmed.

_____
Chief Justice

14

We   concur:

_John Conway Harrison_

_Jim Trieweiler_

_Jim B_

_William E. Hunt_
Justices

15