No. 97-041

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JEREMY CORD WOODS,

Defendant and Appellant.

APPEAL FROM:      District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeremy Cord Woods, Deer Lodge, Montana (pro se)

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Assistant Attorney
General, Helena, Montana; Mike McGrath, Lewis and Clark County
Attorney, Lisa Leckie, Deputy Lewis and Clark County Attorney, Helena,
Montana.

Submitted on Briefs: September 4, 1997

Decided:    December 23, 1997

Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Jeremy Cord Woods (Appellant) appeals from an order of the First Judicial District
Court, Lewis and Clark County, granting the Stateþs petition for destruction of evidence
held by the Helena Police Department.  We affirm.

We frame the issues on appeal as follows:

1.    Did the District Court err when it imposed restitution as part of the underlying sentence?

2.    Did the District Court err when it granted the Stateþs petition for destruction of evidence?

3.    Was Appellantþs restitution obligation discharged in his Chapter 7 bankruptcy proceeding?

4.    Did the District Court err when it failed to appoint counsel to represent Appellant in this proceeding?


BACKGROUND

On November 5, 1993, Appellant was charged by information with issuing a bad check, a felony in violation of õ 45-6-316, MCA.  The information alleged that on October 13, 1993, Appellant issued a check on his account at Seafirst Bank in Washington to Norwest Bank in Helena, Montana, for $3,830.00, knowing that it would not be paid by the depository.  On January 6, 1994, he pled guilty.

After further investigation, it was discovered that Appellant had written over $30,000.00 worth of bad checks during a check writing þspree.þ  Appellant was still writing bad checks as of the date his probation officer had prepared the presentence investigation.  That  probation officer recommended that the court require Appellant to make full restitution for all bad checks, once all checks were accounted for.  The officer estimated that the checks amounted to þtens of thousandsþ of dollars.

Following receipt of the presentence investigation, Appellant prepared a þReport to the Court [and] Defendantþs Corrections of Presentence Investigation.þ  Appellant did not dispute the probation officerþs conclusion regarding the amount of bad checks written, and he did not dispute the recommendation that he make full restitution.  To the contrary, Appellant apologized to the banks and merchants he defrauded and agreed to make full restitution.

Appellant subsequently pled guilty to two additional offenses, theft and bail jumping, that he committed after the original charge was filed.  On May 26, 1994, the court sentenced Appellant to ten years at the Montana State Prison on the bad check charge.  For the two additional charges, the court sentenced him to two five-year terms, both suspended.  The suspended portions of his sentence were to run concurrently with

each other, but consecutively to his ten-year prison sentence.  The court also ordered
Appellant to pay full restitution, as determined by the courtþs restitution officer.  The
restitution officer determined that the restitution totaled $35,823.49.  Appellant did not
appeal his conviction or sentence.

On July 15, 1996, the State filed a petition for destruction of evidence, requesting
that merchandise seized by the Helena Police Department following Appellantþs arrest in
October 1993, be returned to their rightful owner and that the value of those returned
items as well as currency that was seized be applied towards Appellantþs restitution
obligation.  The State alleged that the items it proposed to return þwere either identified
by merchants or [Appellant] or his girlfriend who was present when the checks were
written as having been purchased with the bad checks.þ  Those items included four
firearms, ammunition, gun cleaning equipment, a holster, a TV/radio, jewelry, tools,
compact discs, cassette tapes, clothing, videos, a Sony discman, speakers, headphones,
amplifiers, cassette decks, other stereo equipment, a Chevrolet Nova automobile, a
scanner, and cash in excess of $9,000.00. The State also proposed to return some
personal items to Appellant, and to destroy a few remaining items, such as miscellaneous
receipts, adult magazines, identification papers and keys.

Appellant contested the petition and requested that the court appoint counsel to
represent him.  The District Court denied his request for counsel on the basis that
þWoods [was] not facing further incarceration or additional punishment.. . .þ  Appellant
appealed the denial of his request for an attorney to this Court.  This Court concluded
that Appellantþs substantial rights were not affected by the District Courtþs refusal to
appoint counsel to represent him, and that consequently his appeal was not authorized by
õ 46-20-104(1), MCA.  Accordingly, this Court dismissed the appeal.

The District Court subsequently granted the Stateþs petition for destruction of
evidence, but stayed execution of the order pending final disposition by this Court.  On
December 17, 1996, Appellant filed a notice of appeal from the District Courtþs order
and also requested that this Court appoint counsel to represent him in presenting his
appeal.  On February 24, 1997, we denied his request for appointment of counsel.  We
explained that his entitlement to counsel under õ 46-8-104, MCA, was dependent upon
the existence of a criminal action or proceeding.  We noted that the petition for
destruction of evidence is not a criminal proceeding, and Appellant, who was sentenced
and convicted nearly two years prior to the filing of the petition, faced no additional
charges, incarceration or punishment. Thereafter, Appellant filed his appellate

brief pro
se.

## STANDARD OF REVIEW

We review issues of law to determine whether the courtþs interpretation and application of the law is correct. Peters v. State (Mont. 1997), __ P.2d __, __, 54 St.
Rep. 1185, 1186.

### ISSUE ONE

Did the District Court err when it imposed restitution as part of the underlying
sentence?

Appellant contends that the District Court erred when it imposed restitution as part
of his sentence in May 1994. He claims that the presentence investigation report did not
contain any documentation of the victimsþ pecuniary loss and did not reference his
financial resources or ability to pay restitution, as required by õ 46-18-242, MCA.
Additionally, he insists that because he was only found guilty of issuing one bad check
in the amount of $3,830.00, his restitution obligation should be limited to that amount.
He maintains that the District Court therefore erred in setting his restitution obligation to
an amount over $35,000.00 .

This Court has no jurisdiction to hear this issue. The rules of appellate procedure
provide that a notice of appeal must be filed within 60 days from the date of a criminal
judgment. Rule 5(b), M.R.App.P. In this case, the District Court ordered restitution on
May 26, 1994, and Appellant did not appeal that judgment. The current notice of appeal
from the order granting the Stateþs petition for destruction of evidence, was filed on
December 17, 1996. Because his right to appeal the 1994 judgment against him expired
more than two years ago, he cannot now raise the issue in this latest and unrelated
appeal. State v. Rice (1996), 275 Mont. 81, 85, 910 P.2d 245, 246 (citing State v.
Haskins (1992), 255 Mont. 202, 841 P.2d 542).

### ISSUE TWO

Did the District Court err when it granted the Stateþs petition for destruction of
evidence?

Appellant contends that the District Court erred by granting the Stateþs petition for
destruction of evidence, because in so doing, the District Court allowed the State þto
convert [his] personal propertyþ in excess of the actual pecuniary loss of $3,830.00
caused by his crime. He maintains that such an order violates his constitutional rights
embodied in Article II, Sections 3, 4, 15, 17, and 22 of the Montana State

Constitution and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. We have already held, however, that Appellant waived any arguments regarding the amount of his restitution obligation when he failed to timely appeal the underlying judgment. Furthermore, at the time of sentencing, Appellant fully understood and accepted responsibility for repaying all the banks and merchants whom he defrauded. In response to the probation officerþs recommendation that Appellant pay full restitution, which was in the þtens of thousandsþ of dollars, Appellant stated in his þReport to the Court [and] Defendantþs Corrections of Presentence Investigationþ:

In my period of incarceration I have had much time to think and evaluate myself as a whole. I wish to begin by saying þIþm sorry.þ I want to make my apologies to everyone involved and ask for your forgiveness. To the banks and merchants, I will make the necessary arrangements to make reparation to you all. Please be patient, there is a considerable sum to repay. I will do my best to return the money as quickly as possible.

Accordingly, because Appellant waived any argument challenging the amount of his restitution obligation, and indeed fully accepted responsibility for making full restitution at the time of sentencing, we hold that the lower court did not err in ordering property with a value in excess of $3,830.00 be returned to the defrauded merchants. Appellant next contends that the State misinterprets the District Courtþs restitution order by seeking restitution in an amount over $3,830.00. Appellant is wrong. As we have already pointed out, the District Courtþs order did not limit restitution to the amount for that one bad check. Rather, it ordered Appellant to þpay full restitutionþ in an amount to be determined by the restitution officer after all the bad checks had been fully accounted for. Finally, Appellant maintains that the Stateþs petition was untimely. He contends that because his restitution obligation was made a condition of the suspended portions of his sentence, he is not required to pay restitution until he is released from prison. However, Appellant misapprehends the nature and purpose of the present proceedings. Appellant, who is incarcerated and has no income, is not being ordered to presently pay restitution from any earnings, and the failure to fully pay restitution at this time will not result in the revocation of the suspended portions of his sentence. What is at issue here is the manner in which to dispose of evidence seized by the police. Such evidence is the fruit of Appellantþs crimes and does not rightfully belong to him. The procedure employed by the State provides the means for appropriating or disposing of

such evidence when prosection is complete and no further legal proceedings are contemplated. See õõ 46-5-306 through 46-5-309, MCA. Although the State has characterized the proceeding as a þpetition for destruction of evidence,þ the majority of the items are not actually being destroyed. The record shows that instead, the cash will be turned over to the restitution department to reimburse Appellantþs victims, and the consumer items will be returned to the merchants whom Appellant defrauded. As a part of the proceeding, the State has appropriately requested that the returned assets be applied towards Appellantþs restitution obligation. Allowing Appellant to keep the fruits of his crimes, simply because he has not yet been released from prison and has not yet begun to serve the suspended portions of his sentence, flies in the face of all notions of justice and has no basis in the law. We hold that the District Court did not err when it granted the Stateþs petition.

## ISSUE THREE

Was Appellantþs restitution obligation discharged in his Chapter 7 bankruptcy proceeding?

Appellant contends that the lower court erred when it failed to account for his Chapter 7 bankruptcy proceeding, which was pending when the State filed the petition for destruction of evidence. He cites Pennsylvania Department of Public Welfare v. Davenport (1990), 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588, and argues that his restitution obligation was discharged. According to Appellant, the District Court therefore had no authority to grant the Stateþs petition.

The State contends that Appellant waived any argument that his restitution obligation was discharged in bankruptcy, because he failed to raise that issue to the District Court and now presents it to this Court for the first time on appeal. However, the bankruptcy court did not issue the discharge order until January 9, 1997, one month after the District Court granted the petition on December 11, 1996. Appellant thus could not have argued to the District Court that his restitution obligation was discharged. We hold that Appellant did not waive this argument, and we address the merits of his contention.

We reject Appellantþs argument that a discharge order in a Chapter 7 bankruptcy proceeding also discharges restitution obligations imposed by a criminal court. In a case directly on point, the United States Supreme Court ruled to the contrary. In Kelly v. Robinson (1986), 479 U.S. 36, 50, 107 S.Ct. 353, 361, 93 L.Ed.2d 216, 229, the United States Supreme Court held that õ 523(a)(7) of the Bankruptcy Code, which excepts certain

debts from discharge, þpreserves from discharge any condition a state criminal court imposes as part of a criminal sentence.þ Accordingly, restitution obligations imposed as a condition of probation in state criminal actions are nondischargeable in proceedings under Chapter 7 of the Bankruptcy Code, 11 U.S.C. õ 701 et seq. Kelly, 479 U.S. at 53. The Court based its decision on the stateþs interest in unfettered administration of its criminal justice system; the historical construction of the earlier Bankruptcy Act of 1898 that excepted restitution orders from discharge; and the absence of any evidence that Congress intended to change that construction when it enacted the Bankruptcy Code in 1978. Kelly, 479 U.S. at 53.

Appellant relies on Davenport, but that case is not applicable for two reasons. First, that case involved Chapter 13, not Chapter 7, proceedings. In Davenport, the Supreme Court held that restitution obligations constituted dischargeable þdebtsþ within the meaning of the Bankruptcy Code, 11 U.S.C. õ 101(11). Davenport, 495 U.S. at 555. Because the statutory exception to discharge of debts relied on in Kelly, õ 523(a)(7), does not extend to Chapter 13 proceedings, the Supreme Court concluded that restitution payments are dischargeable pursuant to Chapter 13. Davenport, 495 U.S. at 555. In so ruling, however, the Supreme Court emphasized that its decision þdoes not signal a retreat from the principles applied in Kelly.þ Davenport, 495 U.S. at 563. Because Appellantþs case involved Chapter 7 and not Chapter 13 bankruptcy proceedings, Kelly controls.

In any event, Davenport is no longer good authority for the proposition that restitution obligations are dischargeable even in Chapter 13 proceedings. In response to Davenport, Congress amended Chapter 13 to specifically exclude from discharge a restitution obligation included in a criminal sentence. See Criminal Victims Protection Act of 1990, Pub.L. 101-581, õ 3, 104 Stat. 2865, codified at 11 U.S.C. õ 1328(a)(3). The Davenport result has thus been overruled by statute. We therefore hold that Appellantþs restitution obligation was not discharged by the order of the Bankruptcy Court.

ISSUE FOUR

Did the District Court err when it failed to appoint counsel to represent Appellant in this proceeding?

Appellant maintains that he is entitled to representation by an attorney in presenting his appeal. He contends that the District Court violated õ 46-8-104, MCA, as well as the right to counsel guaranteed by the Montana State Constitution and the United States Constitution. The State, on the other hand, contends that the doctrine of res

judicata
precludes Appellant from raising that issue.  We agree with the State that Appellant is not
entitled to relitigate that issue.

In Scott v. Scott (Mont. 1997), 939 P.2d 998, 54 St. Rep. 548, we defined the doctrine of res judicata to be þa final judgment which, when rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them, upon the same claim or demand.þ  Scott, 939 P.2d at 1001 (citing Fiscus v. Beartooth Electric Cooperative, Inc. (1979), 180 Mont. 434, 436, 591 P.2d 196, 197).  In this case, we have already held that Appellant is not entitled to appointment of counsel pursuant to õ 46-8-104, MCA.  On December 17, 1996, Appellant filed a motion for appointment of counsel and by order filed February 24, 1997, this Court denied that motion for the same reasons that the District Court below denied his motion.  We stated:

We are now presented with essentially the same requests presented to the District Court.  In addition, these requests are made within essentially the same context as was present below.  We will resolve this matter in much the same manner as did the District Court:

Woodsþ entitlement to counsel under õ 46-8-104, MCA is dependent upon the existence of a criminal action or proceeding.  However, the petition for destruction of evidence, brought pursuant to õõ 46-5-306 through 46-5-309, MCA, is not a criminal action or proceeding, as indicated by the stated purpose of the statutes and as established by the relevant facts: Woods was convicted and sentenced for issuing bad checks nearly two years ago, and faces no additional charges, incarceration, or punishment related to that conviction.  Therefore, this Court concludes that Woods is not entitled to appointment of counsel.

Our earlier holding is now res judicata, and we will not revisit it on appeal.  The order of the District Court denying Appellantþs motion for appointment of counsel is affirmed.

Affirmed.

/S/  WILLIAM E. HUNT, SR.

We Concur:

/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART